## B. ERISA ANALYSIS:

The defendants make a fundamental error in their initial analysis of ERISA pre-emption, when they fail to start off on the required analytical framework required by the US Supreme Court in its Opinion in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 US 645, 115 S.Ct. 1671 (1995) (Hereinafter "*Travelers*"). The defendants use pre-*Travelers* caselaw that is of dubious worth since the sea change in pre-emption law that was wrought by the *Travelers* opinion. The High Court, in *Travelers*, began its analysis by proclaiming at the outset:

> [W]e have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law. Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' Id at p. 1676.

Next, the Court held that "[s]ince pre-emption claims turn on Congress's intent, we begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs," 115 S.Ct. at 1677. The US Supreme Court's earlier decisions concerning ERISA pre-emption recognized the "clearly expansive" language of ERISA § 514(a), but for the first time in *Travelers*, the High Court identified the words "insofar as they . . . relate" as somewhat obscure words of limitation. *Id.* In an attempt to confer substance upon these words of limitation the Court remarked:

> If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.' But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality. **That said, we have to recognize that our prior attempt to construe**

9

**the phrase 'relate to' does not give us much help drawing the line here . . . . We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.** Id. at 115 S.Ct. at 1677, Emphasis added.

According to the High Court, the objective of Congress in enacting § 514 of ERISA was to reduce the administrative and financial burden on ERISA plans and plan managers and to eliminate the threat of a multiplicity of conflicting or inconsistent state and local regulations thereby permitting uniform administration of employee benefit plans nationwide. Id. at 1677-78. However, said the High Court, "cost-uniformity was almost certainly not an object of pre-emption, just as laws with only an indirect economic effect on the relative costs of various health insurance packages in a given State are a far cry from those 'conflicting directives' from which Congress meant to insulate ERISA plans." 115 S. Ct. at 1680. Although the defendants' Memorandum of Law cites cases post-*Travelers'*, for some unascertained reason the defendants' never mention this seminal decade old Opinion or its progency directly. This is peculiar since *Travelers* put the brakes on the recklessly expansionistic court analyses that were then taking under the statute's general pre-emption language, into areas not contemplated by Congress.

Indeed, even in *Egelhoff v. Egelhoff*, 532 US 141, 121 S.Ct. 1322 (2001), which is a US Supreme Court case, that references the *Travelers'* opinion, and which is cited by the defendants for the proposition '[A] state law relates to a benefit plan if it has connection with or reference to such plan.' The majority Opinion of Hon. Judge Thomas, found that in order

> "to determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v.*

*Dillingham Constr., N. A., Inc.*, 519 US 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), quoting *Travelers, supra*, at 656, 115 S.Ct. 1671 (citation omitted)."
Id at p. 147.

And most tellingly, the majority opinion in *Egelhoff,* supra, when confronted with the Respondent's argument that nearly all uniform state laws that might have some connection to ERISA plans, and thus could be struck down, if there were no rational limits to ERISA's 'expansive' pre-emption language, (and presented as a case: the laws of the 50 states which revoke a murderer's right to the insurance proceeds of his/her murder victims) Judge Thomas stated:

> We note, however, that the principle underlying the statutes-which have been adopted **by nearly every State-is well established in the law and has a long historical pedigree predating ERISA**. See, e.g., *Riggs v. Palmer*, 115 NY 506, 22 N.E. 188 (1889). **And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable."**
> Id at p. 152, Emphasis added.

Likewise, for purposes of analysis, the tort statutes at issue in this case are nearly uniform nationwide, present in all fifty states, and/or nearly every such state law at issue herein, has an historical pedigree long predating ERISA, sometimes by decades and sometimes by centuries. Plaintiff further notes, that this Court should apply normal conflict pre-emption and field pre-emption principles where, as here, the state common law at issue herein covers ERISA and non-ERISA acts and omissions alike.

The High Court amended the "objectives" principle from Travelers slightly in *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 117 S.Ct. 832 (1997), rephrasing it to stress that the objectives of ERISA are also to be used to determine the "nature of the effect of the state law on ERISA plans." Id. at 325, 117 S.Ct. 832. See also *De Buono v. NYSA-ILA Med. &*

11

*Clinical Services Fund*, 520 US 806, 813-14, 117 S.Ct. 1747(1997) (utilizing the "objectives" principle from *Travelers* and *Dillingham*).

Plaintiff contends that the High Court's recent ERISA cases are consistent with the aforesaid analytical approach of applying normal conflict and field pre-emption principles but that the legal analysis presented by the defendants are contrary to current caselaw principles. See *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 US 806, 812-813, 117 S.Ct. 1747 (1997) (rejecting literal interpretation of ERISA's pre-emption clause); *California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 US 316, 334, 117 S.Ct. 832 (1997) (narrowly interpreting the clause); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 US 645, 656, 115 S.Ct. 1671 (1995) ("go[ing] beyond the unhelpful text [of the clause] and the frustrating difficulty of defining its key term, and look[ing] instead to the objectives of the ERISA statute as a guide"); *Boggs v. Boggs*, 520 US 833, 841, 117 S.Ct. 1754 (1997) (relying on conflict pre-emption principles instead of ERISA's pre-emption clause).

Cataloging ERISA's statutory objectives is a fairly straight-forward exercise. ERISA's primary objectives are to "protect ... the interests of participants ... and their beneficiaries, by requiring the disclosure and reporting ... of financial and other information ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts," 29 U.S.C. § 1001(b), and "by improving the equitable character and the soundness of such plans by requiring them to