vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance." 29 USC § 1001(c).

The next issue presented is whether state tort or contract law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as set forth hereinabove? See, *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399 (1941). In answering that question, this Court must remember that defendants have to overcome a strong presumption against pre-emption. That is because the state common law at issue herein governs a "fiel[d] of traditional state regulation," i.e. tort and/or contract law, where courts are barred from finding federal pre-emption unless such was the 'clear and manifest purpose of Congress,' *Travelers, supra*, 514 US, at 655, 115 S.Ct. 1671 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 US 218, 230, 67 S.Ct. 1146 (1947)), or the state law does 'major damage' to 'clear and substantial' federal interests," *Hisquierdo v. Hisquierdo*, 439 US 572, 581, 99 S.Ct. 802 (1979) (quoting *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500 (1966)).

No one can seriously argue that the defendants have failed to present any evidence of actual damage to federal interests to this Court or any produced a scintilla of evidence of any added administrative burdens on them by litigating the tort issues herein. Given the fact that the defendants, their agents, servants and/or employees, have allegedly violated independent duties to plaintiff, irrespective of the existence of the purported plan, the plaintiff's claims, only at most tangentially and indirectly related to the plan and/or ERISA. This is simply not a case where "uniformity is impossible ... [because] plans are subject to different legal obligations in different States." *Egelhoff*,

532 US at 148, 121 S.Ct. 1322. The plans are subject to similar legal obligations due to the uniform nature of tort and contract law across the fifty states.

A state law may also be preempted by ERISA by virtue of an impermissible "reference to" an ERISA plan "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation." *Dillingham*, supra, 519 U.S. at 325, 117 S.Ct. 832. It cannot be argued by the defendants that the tort or contract laws at issue in this case are 'dependent' upon the existence of ERISA plans, or that the common law expressly reference ERISA in the elements or factors necessary to establish such claims. These torts and contract common law provisions operate separately and independently from ERISA. It is for this reason that the defendants' reliance upon the US Supreme Court opinion in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), misplaced, at best. The High Court held that Texas's judicially created cause of action for the tort of wrongful discharge was expressly preempted by ERISA because "[t]he ... cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan." Id. at 140, 111 S.Ct. 478. There is, however, a key difference between the cause of action at issue in Ingersoll-Rand and the plaintiff's tort and breach of contract claims against the defendants. In *Ingersoll-Rand*, the High Court held that the common law cause of action created by the Supreme Court of Texas was "specifically designed" to affect employee benefit plans because it only " 'allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.' " Id. (citation omitted). Another key difference is that the lawsuit in the case at bar is not brought against ERISA entities and

14

thus does not necessarily affect the relations between ERISA entities. Cf. *Morstein v. National Ins. Services, Inc.*, 93 F.3d 715, 723 (11th Cir., 1996) *en banc*, where the Circuit Court held that allowing preemption of a fraud claim against an individual insurance agent or insurer will not serve Congress's purpose for ERISA. Congress enacted ERISA to protect the interests of employees and other beneficiaries of employee benefit plans. See *Shaw*, 463 U.S. at 90, 103 S.Ct. at 2896. To immunize companies and/or their agents from personal liability for fraudulent misrepresentations would not promote this objective. If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of these companies and the integrity of the relationships of the parties would be nullified.

Under the New York common law, the torts at issue herein, are all traditional state-based laws of general applicability, and clearly make no direct reference to any ERISA plans nor relies on the existence of any ERISA plan to operate. This is a crucial distinction because in *Ingersoll-Rand, supra*, cited by the defendants herein, because the US Supreme Court specifically noted that it was "not dealing ... with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Ingersoll-Rand*, 498 US at 139. Thus, when the Supreme Court describes *Ingersoll-Rand* as a case "where the existence of a pension plan [was] a critical element of a state-law cause of action," *De Buono*, 520 US at 815, 117 S.Ct. 1747 (emphasis added), or one where "a common law cause of action [was] premised on the existence of an ERISA plan," *Dillingham*, 519 U.S. at 324-25, it is referring to a claim where the state law at issue relied, for its very operation, on a direct and unequivocal

15

nexus with an ERISA plan. Id. at 325 (holding that "where the existence of ERISA plans is essential to the law's operation, as in ... *Ingersoll-Rand*, that 'reference' will result in pre-emption."). See also *Smith v. Cohen Benefit Group, Inc.*, 851 F.Supp. 210, 213 (M.D.N.C., 1993) (holding that plaintiffs' claims for common law fraud, constructive fraud, and negligent misrepresentation were not preempted by § 1144(a) because, unlike the cause of action in *Ingersoll-Rand*, these claims involved "general laws that function irrespective of the existence of an ERISA plan.").

Moreover, the defendants have failed to include in their analysis, post-*Travelers*, Second Circuit Court of Appeals cases, that noted the markedly changed standards for ERISA pre-emption analysis, to wit, *Hattem v. Schwarzenegger*, 449 F3d 423 (2nd Cir., 2006) *and Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2nd Cir., 2003) ('And, as we have said, ERISA does not create a "fully insulated legal world" for plans; they must deal with outsiders, such as landlords or debt-collectors, under the same diverse hodge-podge of state law as any other economic actor. *Rebaldo v. Cuomo*, 749 F2d 133, 138 (2nd Cir.) cert. denied, 472 US 1008, 105 S.Ct. 2702'). *Hattem,* supra noted the sea change in pre-emption law occasioned by the High Court's Opinion in *Travelers,* supra. For similar reasons, this Court's pre-emption analysis, utilizing *Travelers* and its progeny in the Second Circuit and elsewhere, should and must result in its finding no ERISA pre-emption to the plaintiff's claims in the case at bar against the non-ERISA entity(ies) herein.