UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK_____X
**SERGIO PAVON,**

    Plaintiff,

-against-

METROPOLITAN LIFE INSURANCE CO., INC.,  Case No. 08 CV 1272(PAC)
And NOVARTIS CORP.,

     Defendants._____  X


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CROSS- MOTION

## AND IN OPPOSITION TO DEFENDANTS' MOTIONS


      **Respectfully Submitted,**

      ROBERT FELDMAN, ESQ.

      _Robert F. Feldman_

      BY:  ROBERT FELDMAN ESQ. (RF-0810)
      Attorneys for Plaintiff
      375 South End Avenue, Ste. 8F
      New York, New York 10118
      (917) 657-5177

# TABLE OF AUTHORITIES

**CASES:**                                                                                **Page No.:**

Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715 (9th Cir., 1997)
.................................................................................................................................................. 19

Bennett v. Southwest Airlines Co., 493 F.3d 762 (7th Cir., 2007).................................... 21

California Division of Labor Standards Enforcement v. Dillingham Construction, N.A.,
   Inc., 519 U.S. 316, 117 S. Ct. 832 (1997)............................................................ 11, 14, 15

Chambers v. Time Warner, Inc., 282 F.3d 147 (2nd Cir., 2002) ......................................... 8

Chapman v. Lab One, 390 F.3d 620 (8th Cir., 2004) ......................................................... 21

City of Rome v. Verizon Communications, 362 F.3d 168 (2nd Cir., 2004)....................... 21

Coleman v. Standard Life Ins. Co., 288 F. Supp. 2d 1116 (E.D.Cal. 2003)..................... 23

Cosmas v. Hassett, 886 F.2d 8 (2nd Cir., 1989) .................................................................. 8

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2nd Cir., 1994) .................... 8

Fulk v. Hartford Life Ins. Co., 839 F. Supp. 1181 (M.D.N.C., 1993) ............................... 20

Geller v. County Line Auto Sales, Inc., 86 F.3d 18 (2nd Cir., 1996) ................................. 17

Gregory v. Daly, 243 F.3d 687 (2nd Cir., 2001).................................................................. 8

Haggerty v. Wyeth Ayerst Pharmaceuticals, D.C.N.Y.2000, 79 F. Supp. 2d 182 ........... 22

Hattem v. Schwarzenegger, 449 F.3d 423 (2nd Cir., 2006)............................................... 16

Hines v. Davidowitz, 312 U.S. 52, 61 S. Ct. 399 (1941).................................................... 13

Id. at 140, 111 S. Ct. 478 .................................................................................................... 14

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S. Ct. 478, 112 L. Ed. 2d 474
   (1990)............................................................................................................................... 14

Katsaros v. Cody, 744 F.2d 270 (2nd Cir. ), cert. denied, 469 U.S. 1072, 105 S. Ct. 565
   (1984) ............................................................................................................................... 26

Klank v. Sears, Roebuck and Co., 735 F. Supp. 260 (N.D.Ill. 1990) ................................ 23

Lontz v. Tharp, 413 F.3d 435 (4th Cir., 2005)................................................................... 21

McMurtry v. Wiseman, 445 F. Supp. 2d 756 (W.D.Ky, 2006) .......................................... 19

Morstein v. National Ins. Services, Inc., 93 F.3d 715 (11th Cir., 1996)...................... 15, 19

Nobile v. Pension Committee of the Pension Plan for Employees of New Rochelle
   Hospital, 611 F. Supp. 725 (S.D.N.Y., 1985)................................................................. 26

Perkins v. Time Ins. Co., 898 F.2d 470 (5th Cir., 1990).................................................... 19

Ray v. Value Behavioral Health, Inc., 967 F. Supp. 417 (D.Nev., 1997).......................... 20

Rebaldo v. Cuomo, 749 F.2d 133 (2nd Cir. ), cert. denied, 472 U.S. 1008 (05 S.Ct. 2
   702')................................................................................................................................. 16

Ritchey v. Upjohn Drug Co., 139 F.3d 1313 (9th Cir., 1998)........................................... 23

Rosenkrans v. Wetzel, 131 F. Supp. 2d 609 (D.C.Pa., 2001)............................................ 21

Ross v. Bernhard, 396 U.S. 531, 90 S. Ct. 733 (1970) ...................................................... 27

Rothman v. Gregor, 220 F.3d 81 (2nd Cir., 2000)............................................................. 8

Sections 502(a)(1) and 502(a)(3) of ERISA. In All Risks, Ltd. v. Equitable Life Assur.
   Soc. of U.S., 931 F. Supp. 409 (D.Md., 1996)................................................................ 28

Smith v. Cohen Benefit Group, Inc., 851 F. Supp. 210 (M.D.N.C., 1993) ...................... 16

United States v. Yazell, 382 U.S. 341, 86 S. Ct. 500 (1966)............................................. 13

i

**Statutes & Administrative Codes**                                    **Page No.:**

29 U.S.C. § ........................................................................................................................... 13
29 U.S.C. § 1001(b) ............................................................................................................. 12
29 U.S.C. § 1132(a)(1)(B) ................................................................................................... 25
29 U.S.C. § 185 .................................................................................................................... 26

**Other**                                                               **Page No.:**

Fed. R. Civ. P. ..................................................................................................................... 25
Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 7

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____ . _____ X

**SERGIO PAVON,**

Plaintiff,

-against-

**METROPOLITAN LIFE INSURANCE CO., INC.,**
And **NOVARTIS CORP.,**

Defendants.

__. ._____ . . _____ X

**PLAINTIFF'S
MEMORANDUM OF
LAW**
Case No. 08 CV 1272(PAC)

### I.    PRELIMINARY STATEMENT

Plaintiff, SERGIO PAVON, by his attorney(s), ROBERT FELDMAN, ESQ., hereby

Submits this Memorandum of Law In Opposition to the Defendants', METROPOLITAN

LIFE INSURANCE CO., and NOVARTIS USA a/k/a NOVARTIS CORP.'s, Motions

and In Support of Plaintiff's Cross-Motion To Remand, and for the Court to grant

plaintiff such other and further relief as is just, proper and equitable in the premises.

### II.    STATEMENT OF FACTS

At all times hereinafter mentioned, the defendant, METLIFE-INS. was and still is

the disability insurance provider of the plaintiff, SERGIO, who has provided to plaintiff

at all relevant times the plaintiff's long term disability benefits under Group Health

Coverage Claim Number 630404216563, whose short term disability and/or short term

disability benefits commenced in or about December 2003, and thereafter, plaintiff

qualified for and/or obtained from the defendant, METLIFE-INS. long term disability

benefits which commenced in or about June-July, 2004.

That defendant, METLIFE-INS. thereafter wrongfully terminated the plaintiff's

disability benefits and Group Health Coverage on or about January 11, 2008 and

defendant, **NOVARTIS**, thereafter wrongfully terminated the plaintiff's Group Health Coverage January 31, 2008 in bad faith and without reasonable cause in law or fact, since the grounds enumerated in the defendant's claim letter are without any credible basis in fact, to wit, the defendant, MET LIFE falsely alleged that it had requested report(s) from plaintiff's treating psychiatrist regarding plaintiff's disability, but did not receive such report(s) from plaintiff. In point of fact, the plaintiff, **SERGIO**, had been examined on or about October 10, 2006, by an independent treating psychiatrist, Dr. Solomon Miskin, who was acting on behalf of the defendant, METLIFE-INS. and Dr. Miskin's IME Report of October 10, 2006, confirmed and opined within a reasonable degree of medical certainty, that the plaintiff, SERGIO, had sustained, and was still suffering from his long term disability and plaintiff verily believes said Report opined that plaintiff would continue to suffer from said long term disability for a long time to come.

Upon information and belief and at all times hereinafter mentioned, the said defendants, METLIFE-INS, NOVARTIS, their agents, servants and/or employees, respectively, unlawfully and/or tortiously discriminated against the plaintiff, SERGIO, based upon the plaintiff's disability status, as herein alleged all to plaintiff's grievous injury, damages, extreme emotional distress, mental anguish, great anxiety, humiliation.

That at all relevant times after the defendant, METLIFE-INS, in violation of law and without any lawful cause, and in violation of the plaintiff's insurance policies, wrongfully terminated and/or cut off the plaintiff's long term disability benefits, on or about January 11, 2008, and thereafter, the co-defendant, Novartis which company, at all relevant times herein mentioned provided plaintiff with his medical and drug benefits, also, without reasonable cause in law or fact, wrongfully and unlawfully terminated the

plaintiff's medical and drug benefits, in violation of the plaintiff's insurance policies, solely on the basis of the defendant's, MET LIFE-INS', prior acts and omissions.

That the whole essence of this case is that the defendants did not make any determination whether or not the plaintiff was or was not in fact disabled. That the defendants, their agents, servants and/or employees only allegedly claimed that a medical report (that had in fact been previously been provided to MET LIFE by plaintiff), was not provided and as a result of this malicious misrepresentation of fact, the plaintiff's benefits were cut off, and plaintiff was proximately caused to sustain severe mental anguish, monetary damages, and other severe personal injuries thereby. The defendants' agents, servants and/or employees, knew or should have known that their allegations concerning the lack of receipt of the psychiatrist's report was false and/or acted with reckless disregard as to their truth or falsity of that allegation, given that Dr. J. Corbin states that he received no requests, by fax or otherwise from defendant, Met Life, in December 2007, for any further medical/disability reports concerning the plaintiff. That had plaintiff or his psychiatrist received such recent request they would have immediately provided such reports to MET LIFE. The defendant's, MET LIFE's, misrepresentation of material fact, contained in Defendants' Exhibit "D" annexed to its Motion Papers, to wit, that the plaintiff and/or said Dr. J. Corbin failed and refused to timely provide such medical disability report to said defendant, MET LIFE, in response to its request is blatantly untrue. Moreover, the plaintiff has annexed hereto as Exhibit "E" and incorporates herein by reference, Dr. Corbin's statement that he never received any fax or other request from the defendants in December 2007 that requested any reports or other documents

3

concerning the plaintiff's long disability, as falsely alleged in the defendants' January 11, 2008 letter.

The plaintiff has a long term disability, as was confirmed again in October 2006, within a reasonable degree of medical certainty, and plaintiff continues to be so disabled for a long time to come. Defendant, MET LIFE, its agents servants and/or employees and/or persons acting on its behalf or in concert therewith without any lawful or proper basis, and without any proper medical determination, unilaterally cut of his long term disability benefits and tortiously interfered with the plaintiff's contractual relations with co-defendant, NOVARTIS' prescription and medical insurance plan concerning the plaintiff, proximately causing such coverage to be wrongfully and unilaterally cut off.

Co-defendant, NOVARTIS, who was at all relevant times the plaintiff's EMPLOYER, and said company provided prescription and medical coverage to the plaintiff, did without just or reasonable cause therefore, and relying solely upon the wrongful and unlawful misrepresentations of fact, by defendant, MET LIFE, and that said defendant, MET LIFE, with malicious and/or other wrongful intent, did tortiously interfere with plaintiff's insurance benefits from co-defendant. NOVARTIS, thereby causing plaintiff's EMPLOYER, NOVARTIS, to cancel plaintiff's insurance all to plaintiff's grievous injury and damages. Defendant, NOVARTIS, did materially breach its insurance Agreement with the plaintiff, SERGIO, and said co-defendant, without basis or authority in law or fact, did wrongfully and unlawfully cancel the plaintiff's, SERGIO's, Group Health Coverage on or about January 31, 2008 without any credible or reasonable basis in fact or law, all to plaintiff's grievous injury and damages.

That the respective defendants', METLIFE-INS' and NOVARTIS' bad faith conduct, unlawful acts and omissions constituted a material breach of its respective agreements with the plaintiff, SERGIO, proximately caused the plaintiff to sustain severe emotional distress and mental anguish as a result thereof, and to incur medical expenses and other damages in an effort to cure plaintiff of his ailments, and that plaintiff has been confined to his bed and home as a result thereof, and has been unable to attend to his usual and customary duties as a proximate result of the defendants material breaches of said agreements and that plaintiff has been deprived of his right to obtain required medications, medicines, medical care, psychiatric care, supplies, as a result of the foregoing material breaches of their respective agreements with the plaintiff, and the plaintiff has been caused to sustain the loss of his income and his ability to pay for the necessaries of his life, including but not limited to food, transportation, housing, etc., due to the defendants' wrongful and unlawful acts and omissions; that the respective defendants further breached the provisions of the parties' contract by the defendant's material breaches of their agreement, and by reason of the defendant's false representations of material fact, and that defendant's acts and/or omissions were and still are without just cause, excuse or justification and have proximately caused plaintiff, SERGIO PAVON, plaintiff's injury, damages, extreme emotional distress, mental anguish, great anxiety, humiliation all to his grievous injury and damages.

Plaintiff has asserted various causes of action against the defendants, jointly and severally, including but not limited to: breach of plaintiff's insurance agreements with the respective defendants; intentional infliction of extreme emotional distress; declaratory judgment and injunctive relief; unlawful discrimination; and misrepresentation.

This is not a typical case where the insurers/Plan Administrators have made an actual medical determination, under an ERISA plan, that the employee did not allegedly have a disability (long term or short term) and as a result the employee's disability benefits were cut off, resulting in a lawsuit by the employee to restore benefits.

In the case at bar the plaintiff's causes of action arise from independent duties the defendants had to the plaintiff, with respect to the plaintiff's insurance agreement, and with respect to their duties owed to the plaintiff under tort law. Defendants' Exhibit "D" clearly shows the false representations of fact made by the defendants, in their wrongful attempt to abrogate the plaintiff's rights. Plaintiff's Exhibit "1" annexed hereto, clearly shows defendants' representations of fact to be false as a matter of law and the annexed Affirmation of plaintiff's attorney, ROBERT FELDMAN, ESQ., dated May 19, 2008 incorporated herein by reference; the Plaintiff's Verified Complaint herein (Defendants' Exhibit "A" incorporated herein by reference) and this Memorandum of Law, dated May 19, 2008, clearly establish the plaintiff's right to recover against said defendants.

Defendants' Exhibits "B" and "C" clearly show, the within defendants are not the named fiduciaries or Plan Administrators under ERISA. Since neither of the within named defendants, are Administrators or fiduciaries (see Defendants' Exhibits B & C) then ERISA's general pre-emption language and/or claim pre-emption language does not and cannot apply to said defendants. The plaintiff's attorney notes that nowhere in the defendants' motion papers are any facsimile documents or proof of service/receipt of any facsimile requests upon the plaintiff, the plaintiff's physician, Corbin, or plaintiff's attorney, Robert Feldman, with respect to the alleged December 13, 2007 transmission. Nor did the defendants present either the Plan or the Insurance Policies that they claim

are central to the Court's disposition of this application. Instead the defendants present a rump version of the supposed plan that might run afoul of the best evidence rule and/or the parol evidence rule in that it is not possible for the Court to determine whether Exhibits "B" and "C" annexed to defendants' motion papers attempt to vary the actual alleged ERISA plan and/or Insurance Policy(ies) herein, when the original alleged plan and/or insurance policy(ies) upon which defendants appear to rely upon for their defense(s) are not in evidence before the Court, and the plaintiff and his attorneys have not had the opportunity to inspect review or contest whether or not the original alleged Plan and Insurance policies herein are as the defendants' unsupported allegations of them claim. Indeed, the defendants have not produced an iota of proof that the plaintiff relied upon either Exhibit "B" or "Exhibit "C", and the Court should and must ignore such documents for the reasons stated below. These are fatal flaws in the defendants' evidentiary proof, and for the reasons set forth hereinbelow result in the Court's denial of the defendants' Motions.

The defendant, MET-LIFE, has not argued in this motion that it is an improper party herein the plaintiff's claim against said defendant as well as the co-defendant, NOVARTIS must be sustained by the Court, *inter alia* for the reasons set forth below.

## III.   ARGUMENT

### POINT I
### STANDARD OF ANALYSIS ON DEFENDANTS' MOTIONS & PLAINTIFF'S CROSS-MOTION

### A.  MOTION TO DISMISS FRCP 12(b)(6)

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations

in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F3d 147, 152 (2nd Cir., 2002) ( citing *Gregory v. Daly*. 243 F3d 687, 691 (2nd Cir., 2001)). However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F3d 763, 771 (2nd Cir., 1994). The Court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 US 41, 45-46, 78 S.Ct. 99 (1957).

In deciding a Rule 12(b)(6) motion, courts may consider "any written instrument attached to the complaint as an exhibit or "any statements or documents incorporated in it by reference ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*. 220 F3d 81, 99-89 (2nd Cir., 2000); see also *Cosmas v. Hassett*, 886 F2d 8, 13 (2nd Cir., 1989). Plaintiff, SERGIO PAVON, cited the January 2008 letter from the defendants in the Verified Complaint, accordingly. the Court may consider that letter for the purposes of deciding this motion. However, the Court should and must not consider Defendants' other submissions for purposes of deciding this motion, as those documents were not incorporated by reference or cited to in the Complaint, and there is not sufficient indication that plaintiff relied upon these documents, Defendants' Exhibits "B" and "C" in commencing this action.

8

## B. ERISA ANALYSIS:

The defendants make a fundamental error in their initial analysis of ERISA pre-

emption, when they fail to start off on the required analytical framework required by the

US Supreme Court in its Opinion in *New York State Conference of Blue Cross & Blue*

*Shield Plans v. Travelers Ins. Co.*, 514 US 645, 115 S.Ct. 1671 (1995) (Hereinafter

"Travelers"). The defendants use pre-*Travelers* caselaw that is of dubious worth since the

sea change in pre-emption law that was wrought by the *Travelers* opinion. The High

Court, in *Travelers*, began its analysis by proclaiming at the outset:

> [W]e have never assumed lightly that Congress has derogated state regulation,
> but instead have addressed claims of pre-emption with the starting presumption
> that Congress does not intend to supplant state law. Indeed, in cases like this one,
> where federal law is said to bar state action in fields of traditional state regulation,
> we have worked on the 'assumption that the historic police powers of the States
> were not to be superseded by the Federal Act unless that was the clear and
> manifest purpose of Congress.' Id at p. 1676.

Next, the Court held that "[s]ince pre-emption claims turn on Congress's intent, we begin

as we do in any exercise of statutory construction with the text of the provision in

question, and move on, as need be, to the structure and purpose of the Act in which it

occurs," 115 S.Ct. at 1677. The US Supreme Court's earlier decisions concerning

ERISA pre-emption recognized the "clearly expansive" language of ERISA § 514(a), but

for the first time in *Travelers*, the High Court identified the words "insofar as they . . .

relate" as somewhat obscure words of limitation. *Id.* In an attempt to confer substance

upon these words of limitation the Court remarked:

> If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then
> for all practical purposes pre-emption would never run its course, for '[r]eally,
> universally, relations stop nowhere.' But that, of course, would be to read
> Congress's words of limitation as mere sham, and to read the presumption against
> pre-emption out of the law whenever Congress speaks to the matter with
> generality. **That said, we have to recognize that our prior attempt to construe**

9

**the phrase 'relate to' does not give us much help drawing the line here** . . . . We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, **and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.** Id. at 115 S.Ct. at 1677, Emphasis added.

According to the High Court, the objective of Congress in enacting § 514 of ERISA was to reduce the administrative and financial burden on ERISA plans and plan managers and to eliminate the threat of a multiplicity of conflicting or inconsistent state and local regulations thereby permitting uniform administration of employee benefit plans nationwide. Id. at 1677-78. However, said the High Court, "cost-uniformity was almost certainly not an object of pre-emption, just as laws with only an indirect economic effect on the relative costs of various health insurance packages in a given State are a far cry from those 'conflicting directives' from which Congress meant to insulate ERISA plans." 115 S. Ct. at 1680. Although the defendants' Memorandum of Law cites cases post-*Travelers'*, for some unascertained reason the defendants' never mention this seminal decade old Opinion or its progency directly. This is peculiar since *Travelers* put the brakes on the recklessly expansionistic court analyses that were then taking under the statute's general pre-emption language, into areas not contemplated by Congress.

Indeed, even in *Egelhoff v. Egelhoff*, 532 US 141, 121 S.Ct. 1322 (2001), which is a US Supreme Court case, that references the *Travelers'* opinion, and which is cited by the defendants for the proposition '[A] state law relates to a benefit plan if it has connection with or reference to such plan.' The majority Opinion of Hon. Judge Thomas, found that in order

> "to determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v.*

10

*Dillingham Constr., N. A., Inc.*, 519 US 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), quoting *Travelers,* supra, at 656, 115 S.Ct. 1671 (citation omitted)." Id at p. 147.

And most tellingly, the majority opinion in *Egelhoff,* supra, when confronted with the

Respondent's argument that nearly all uniform state laws that might have some

connection to ERISA plans, and thus could be struck down, if there were no rational

limits to ERISA's 'expansive' pre-emption language, (and presented as a case: the laws

of the 50 states which revoke a murderer's right to the insurance proceeds of his/her

murder victims) Judge Thomas stated:

> We note, however, that the principle underlying the statutes-which have been adopted **by nearly every State-is well established in the law and has a long historical pedigree predating ERISA.** See, e.g., *Riggs v. Palmer,* 115 NY 506, 22 N.E. 188 (1889). **And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable."** Id at p. 152, Emphasis added.

Likewise, for purposes of analysis, the tort statutes at issue in this case are nearly

uniform nationwide, present in all fifty states, and/or nearly every such state law at issue

herein, has an historical pedigree long predating ERISA, sometimes by decades and

sometimes by centuries. Plaintiff further notes, that this Court should apply normal

conflict pre-emption and field pre-emption principles where, as here, the state common

law at issue herein covers ERISA and non-ERISA acts and omissions alike.

The High Court amended the "objectives" principle from Travelers slightly in

*California Division of Labor Standards Enforcement v. Dillingham Construction, N.A.,*

*Inc.,* 519 U.S. 316, 117 S.Ct. 832 (1997), rephrasing it to stress that the objectives of

ERISA are also to be used to determine the "nature of the effect of the state law on

ERISA plans." Id. at 325, 117 S.Ct. 832. See also *De Buono v. NYSA-ILA Med. &*

11

*Clinical Services Fund*, 520 US 806, 813-14, 117 S.Ct. 1747(1997) (utilizing the "objectives" principle from *Travelers* and *Dillingham*).

Plaintiff contends that the High Court's recent ERISA cases are consistent with the aforesaid analytical approach of applying normal conflict and field pre-emption principles but that the legal analysis presented by the defendants are contrary to current caselaw principles. See *De Buono v. NYSA-ILA Medical and Clinical Services Fund,* 520 US 806, 812-813, 117 S.Ct. 1747 (1997) (rejecting literal interpretation of ERISA's pre-emption clause); *California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.,* 519 US 316, 334, 117 S.Ct. 832 (1997) (narrowly interpreting the clause); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 US 645, 656, 115 S.Ct. 1671 (1995) ("go[ing] beyond the unhelpful text [of the clause] and the frustrating difficulty of defining its key term, and look[ing] instead to the objectives of the ERISA statute as a guide"); *Boggs v. Boggs,* 520 US 833, 841, 117 S.Ct. 1754 (1997) (relying on conflict pre-emption principles instead of ERISA's pre-emption clause).

Cataloging ERISA's statutory objectives is a fairly straight-forward exercise. ERISA's primary objectives are to "protect ... the interests of participants ... and their beneficiaries, by requiring the disclosure and reporting ... of financial and other information ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts," 29 U.S.C. § 1001(b), and "by improving the equitable character and the soundness of such plans by requiring them to

vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance." 29 USC § 1001(c).

The next issue presented is whether state tort or contract law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as set forth hereinabove? See, *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399 (1941). In answering that question, this Court must remember that defendants have to overcome a strong presumption against pre-emption. That is because the state common law at issue herein governs a "fiel[d] of traditional state regulation," i.e. tort and/or contract law, where courts are barred from finding federal pre-emption unless such was the 'clear and manifest purpose of Congress,' *Travelers, supra,* 514 US, at 655, 115 S.Ct. 1671 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 US 218, 230, 67 S.Ct. 1146 (1947)), or the state law does 'major damage' to 'clear and substantial' federal interests," *Hisquierdo v. Hisquierdo*, 439 US 572, 581, 99 S.Ct. 802 (1979) (quoting *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500 (1966)).

No one can seriously argue that the defendants have failed to present any evidence of actual damage to federal interests to this Court or any produced a scintilla of evidence of any added administrative burdens on them by litigating the tort issues herein. Given the fact that the defendants, their agents, servants and/or employees, have allegedly violated independent duties to plaintiff, irrespective of the existence of the purported plan, the plaintiff's claims, only at most tangentially and indirectly related to the plan and/or ERISA. This is simply not a case where "uniformity is impossible ... [because] plans are subject to different legal obligations in different States." *Egelhoff,*

13

532 US at 148, 121 S.Ct. 1322. The plans are subject to similar legal obligations due to the uniform nature of tort and contract law across the fifty states.

A state law may also be preempted by ERISA by virtue of an impermissible "reference to" an ERISA plan "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation." *Dillingham*, supra, 519 U.S. at 325, 117 S.Ct. 832. It cannot be argued by the defendants that the tort or contract laws at issue in this case are 'dependent' upon the existence of ERISA plans, or that the common law expressly reference ERISA in the elements or factors necessary to establish such claims. These torts and contract common law provisions operate separately and independently from ERISA. It is for this reason that the defendants' reliance upon the US Supreme Court opinion in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), misplaced, at best. The High Court held that Texas's judicially created cause of action for the tort of wrongful discharge was expressly preempted by ERISA because "[t]he ... cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan." Id. at 140, 111 S.Ct. 478. There is, however, a key difference between the cause of action at issue in Ingersoll-Rand and the plaintiff's tort and breach of contract claims against the defendants. In *Ingersoll-Rand*, the High Court held that the common law cause of action created by the Supreme Court of Texas was "specifically designed" to affect employee benefit plans because it only " 'allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.' " Id. (citation omitted). Another key difference is that the lawsuit in the case at bar is not brought against ERISA entities and

14

thus does not necessarily affect the relations between ERISA entities. Cf. *Morstein v. National Ins. Services, Inc.*, 93 F.3d 715, 723 (11th Cir., 1996) *en banc*, where the Circuit Court held that allowing preemption of a fraud claim against an individual insurance agent or insurer will not serve Congress's purpose for ERISA. Congress enacted ERISA to protect the interests of employees and other beneficiaries of employee benefit plans. See *Shaw*, 463 U.S. at 90, 103 S.Ct. at 2896. To immunize companies and/or their agents from personal liability for fraudulent misrepresentations would not promote this objective. If ERISA preempts a beneficiary's potential cause of action for misrepresent-ation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of these companies and the integrity of the relationships of the parties would be nullified.

Under the New York common law, the torts at issue herein, are all traditional state-based laws of general applicability, and clearly make no direct reference to any ERISA plans nor relies on the existence of any ERISA plan to operate. This is a crucial distinction because in *Ingersoll-Rand, supra,* cited by the defendants herein, because the US Supreme Court specifically noted that it was "not dealing ... with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Ingersoll-Rand,* 498 US at 139. Thus, when the Supreme Court describes *Ingersoll-Rand* as a case "where the existence of a pension plan [was] a critical element of a state-law cause of action," *De Buono*, 520 US at 815, 117 S.Ct. 1747 (emphasis added), or one where "a common law cause of action [was] premised on the existence of an ERISA plan," *Dillingham,* 519 U.S. at 324-25, it is referring to a claim where the state law at issue relied, for its very operation, on a direct and unequivocal

15

nexus with an ERISA plan. Id. at 325 (holding that "where the existence of ERISA plans is essential to the law's operation, as in ... *Ingersoll-Rand*, that 'reference' will result in pre-emption."). See also *Smith v. Cohen Benefit Group, Inc.*, 851 F.Supp. 210, 213 (M.D.N.C., 1993) (holding that plaintiffs' claims for common law fraud, constructive fraud, and negligent misrepresentation were not preempted by § 1144(a) because, unlike the cause of action in *Ingersoll-Rand*, these claims involved "general laws that function irrespective of the existence of an ERISA plan.").

Moreover, the defendants have failed to include in their analysis, post-*Travelers*, Second Circuit Court of Appeals cases, that noted the markedly changed standards for ERISA pre-emption analysis, to wit, *Hattem v. Schwarzenegger*, 449 F3d 423 (2nd Cir., 2006) *and Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2nd Cir., 2003) ('And, as we have said, ERISA does not create a "fully insulated legal world" for plans; they must deal with outsiders, such as landlords or debt-collectors, under the same diverse hodge-podge of state law as any other economic actor. *Rebaldo v Cuomo*, 749 F2d 133, 138 (2nd Cir.) cert. denied, 472 US 1008, 105 S.Ct. 2702'). *Hattem*, supra noted the sea change in pre-emption law occasioned by the High Court's Opinion in *Travelers*, supra. For similar reasons, this Court's pre-emption analysis, utilizing *Travelers* and its progeny in the Second Circuit and elsewhere, should and must result in its finding no ERISA pre-emption to the plaintiff's claims in the case at bar against the non-ERISA entity(ies) herein.

16

## C. Plaintiff does not seek alternative remedies that conflict with ERISA

The second prong of ERISA pre-emption also advanced by the defendants is that the plaintiff is attempting an alternative remedy either conflicting with ERISA, or barred by ERISA § 502 remedial provisions. The defendants argue the Supreme Court's decision in *Aetna Health, Inc. v. Davila*, 542 US 200, 124 S.Ct. 2488 (2004), that the Court held that state causes of action purporting to supplement ERISA § 502(a) are preempted "even if the elements of the state cause of action [do] not precisely duplicate the elements of an ERISA claim." Id. at 2499-2500. In that case, however, the plaintiffs were plan participants and beneficiaries who brought suit "only to rectify a wrongful denial of benefits promised under ERISA-regulated plans" and who did not attempt to remedy any violation of a legal duty independent of ERISA. Id. at 2492-93, 2498. That was the reason that the state remedy in that case was preempted. Therefore the defendants' use of *Davila* is misplaced since the plaintiff has brought this lawsuit to remedy violations of legal duties independent of ERISA and against non-ERISA entity(ies).

In *Geller v. County Line Auto Sales, Inc.*, 86 F3d 18 (2nd Cir., 1996), the Second Circuit held, that the plaintiffs' fraud claim may stand. 'ERISA is a remedial statute enacted to protect the interests of beneficiaries of private retirement plans by reducing the risk of loss of pension benefits. ERISA established a comprehensive federal statutory program intended to control abuses associated with pension benefit plans.... In this case, however, allowing the plaintiffs to pursue their common law fraud claim would in no way compromise the purpose of Congress and does not impede federal control over the regulation of employee benefit plans. To the contrary, insuring the honest administration of financially sound plans" is critical to the accomplishment of ERISA's mission. ERISA

is designed to protect the interests of participants and beneficiaries of employee benefit plans, and the preemption provision should not be read to contravene the statute's underlying design.' Likewise the plaintiff's lawsuit by protecting beneficiaries of plans from misrepresentations and other tortious conduct is also designed to ensure the honest conduct of the defendants and to remedy the defendants' breaches of honest conduct.

The Second Circuit further held in *Geller*, that 'The plaintiffs' common law fraud claim, which seeks to advance the rights and expectations created by ERISA, is not preempted simply because it may have a tangential impact on employee benefit plans.... The plaintiffs' fraud claim does not rely on the pension plan's operation or management. The "bare bones" of the complaint are that 1) the defendants fraudulently misrepresented that [the officer's girlfriend] was a full-time employee and 2) in reliance on the defendants' representation, the plaintiffs paid out more than $104,000 on her behalf. The plan was only the context in which this garden variety fraud occurred.' Likewise in the case at bar, the plan was only the context in which the defendants' garden variety fraud and other tortious conduct blossomed and therefore, these claims are not pre-empted by ERISA either. The defendants represented that they had notified Plaintiff's physician, J. Corbin, by fax, and also the plaintiff himself, to provide certain medical records in mid-December 2007. (Defendants' Exhibit "D") but both the plaintiff and his physician, Dr. Corbin in his annexed Affidavit sworn to on May 19, 2008, deny that any such requests were ever sent by either of the defendants. Malti Patel, the defendant's, MET-LIFE's, employee who made this outrageous misrepresentation of fact on behalf of METLIFE, was allegedly terminated shortly after her participation in these tortious and wrongful acts and omissions against the plaintiff.

18

Other post-*Travelers'* cases which have upheld tort claims as not pre-empted under ERISA, include, *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F3d 715, 723-24 (9th Cir., 1997) (holding that a pension trust fund's common law fraud claim was not an alternative enforcement mechanism to ERISA because the claim arose from "state law doctrines of general application," and noting that "[a]s a service provider offering non-fiduciary custodial services, Citibank's relationship with the Trust Funds was no different from that between Citibank and any of its customers."); *Morstein v. Nat'l Ins. Services*, 93 F.3d 715, 723 (11th Cir.,1996) (holding that a plan participant's common law fraud claim against insurance agents for "fraudulently inducing her to change benefit plan" was not expressly preempted by ERISA because, among other things, "[t]hese same agents currently face the threat of state tort claims if they make fraudulent representations to individuals and entities not governed by ERISA plans.").

In *Perkins v. Time Ins. Co.*, 898 F.2d 470 (5th Cir., 1990), the Circuit Court held, that the insured's claim that insurance agent fraudulently induced insured to surrender coverage under existing plan, and to participate in plan governed by ERISA which did not provide promised coverage, "relates to" that plan only indirectly, and as such is not preempted by Act. In *McMurtry v. Wiseman*, 445 F.Supp.2d 756 (W.D.Ky, 2006), the Court held that ERISA did not preempt state law claims of fraud and negligent misrepresentation against agent of disability insurer/plan administrator where subject claims were traditional areas of state law not specifically referenced within ERISA, claims only affected relations of one ERISA entity, the beneficiary, and would not affect the structure, administration or type of benefits provided under the ERISA plan, which would not be directly impacted by recovery against agent. In *Fulk v. Hartford Life Ins.*

19

*Co.*, 839 F.Supp. 1181 (M.D.N.C.,1993) the Court held that ERISA plan participant's state law claims against employer and insurer for fraud and misrepresentation would not be preempted by ERISA simply because they happen to relate tangentially to employee benefit plan. Likewise in the case at bar, the plaintiff's fraud and misrepresentation claims should not be pre-empted merely because the defendants assert that they may relate, tangentially at best, to an employee benefit plan. In *Ray v. Value Behavioral Health, Inc.*, 967 F.Supp. 417 (D.Nev.1997), the Court held that state law negligence, breach of fiduciary duty, emotional distress, and invasion of privacy claims asserted against employer of psychological counselor by patient, who was treated by counselor pursuant to her husband's employee benefits plan, did not "relate to" husband's benefits plan, and thus were not preempted under ERISA; alleged harms would have occurred regardless of whether services were secured through plan covered by ERISA, and claims were exactly the sort of generally applicable personal injury laws that ERISA does not preempt. In the case at bar, the defendants might have had some argument that the plaintiff was seeking to litigate solely a benefits denial claim, if the defendants had in fact duly and properly sent out a timely request for medical reports to plaintiff and/or his physician(s), the plaintiff and his physician then failed to timely supply such report, and thereafter as a consequence of the first two factors, the defendants denied benefits to the plaintiff. However, in the case at bar, the defendants failed to meet the first and second factors, so that there were no timely requests made by them, and therefore the second factor did not come into play either, and as a result, there was no lawful or proper predicate for the third consequence. As a result of the foregoing, the Court should deny the defendants' motion in its entirety as no ERISA preemption is present in whole or part.

20

## POINT II
## THE COURT SHOULD REMAND THIS LAWSUIT TO STATE COURT GIVEN THAT THE PLAINTIFF'S CAUSES OF ACTION ARE NOT PRE-EMPTED COMPLETELY OR IN PART ON PLAINTIFF'S CROSS-MOTION TO REMAND

Ordinary preemption of a state law claim by federal law requires the application of federal substantive law. If the federal law that purportedly preempts state law is alleged in a well-pleaded complaint, that will provide a basis for federal question jurisdiction. Ordinary preemption will not, however, permit removal jurisdiction if the plaintiff chooses to frame his claim based solely on state law and such preemption is raised only as a defense by the defendant. See e.g., *Bennett v. Southwest Airlines Co.*, 493 F.3d 762 (7th Cir., 2007) (denying petition for rehearing, holding that, under well-pleaded complaint rule, argument for preemption, but not complete preemption, of claims arising out aircraft overrunning runway and stopping on city street did not permit removal as it merely raised an affirmative defense); *Lontz v. Tharp*, 413 F.3d 435 (4th Cir., 2005) (reviewing denial of remand and reversing, holding that where claims are not completely preempted by NLRA that a federal preemption defense will not confer removal jurisdiction on federal court); *Chapman v. Lab One,* 390 F.3d 620 (8th Cir., 2004) (noting that ordinary preemption is merely a defense, in context of reviewing denials of remand and reversing, holding that claims not completely preempted by Federal Railroad Safety Act as amended should be remanded to State Court); *City of Rome v. Verizon Communications*, 362 F.3d 168 (2nd Cir., 2004) (vacating district court decision for lack of subject-matter jurisdiction and remanding to state court, holding that defense under federal Telecommunications Act did not establish federal question jurisdiction); *Rosenkrans v. Wetzel,* 131 F.Supp.2d 609 (D.C.Pa.2001) (difference between ordinary

21

and complete preemption is important, as the district court lacks power to resolve questions of ordinary preemption, raised defensively, and must remand); *Haggerty v. Wyeth Ayerst Pharmaceuticals*, D.C.N.Y.2000, 79 F.Supp.2d 182, quoting Wright, Miller & Cooper. Even if the defense of federal preemption is anticipated by the plaintiff and then negated in the complaint, the complaint would not be well-pleaded and thus, under settled principles discussed in the preceding section, would not be sufficient to create removal jurisdiction).

In contrast, under the complete-preemption doctrine, which has been invoked in a significant—and ever-increasing—number of cases and contexts, a narrow class of claims are so "necessarily federal" that they always will permit removal to federal court. In these cases, federal law "not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting congress's intent to permit removal." Thus, if a plaintiff files suit in state court based upon a state cause of action, and the defendant removes the case on the basis of complete preemption, the federal district court will re-characterize the plaintiff's state cause of action as a federal claim for relief, making the removal proper on the basis of federal question jurisdiction. In this sense, the complete-preemption doctrine overrides such fundamental cornerstones of federal subject matter jurisdiction as the well-pleaded complaint rule and the principle that the plaintiff is master of the complaint. Complete preemption does not just represent a difference in the scope of the preemption of a state cause of action by federal law; rather it is a difference in kind. In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a federal defense to the application

22

of state law; rather, it replaced the state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum.

*In Klank v. Sears, Roebuck and Co.*, 735 F.Supp. 260 (N.D.Ill.1990), the Court held that Employee Retirement Income Security Act did not preempt employee's Illinois state law claims against former employer for fraud, negligent misrepresentation, and breach of confidential relationship, and thus did not come within scope of ERISA; therefore, district court lacked federal question jurisdiction over employee's action, which employer had removed to federal district court, and action would be remanded to state court. In *Coleman v. Standard Life Ins. Co.*, 288 F.Supp.2d 1116 (E.D.Cal.2003) the Court held, that ERISA plan participant's admissions in complaint that, *inter alia*, his state law claims sought recovery under ERISA plan, could not be basis for dismissal of his state claims on ERISA preemption grounds, where participant pled his ERISA and state law claims alternatively in complaint. In *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, cert.den. 525 U.S. 963 (9th Cir.,1998) the Circuit Court held that even when complete preemption is norm for area involved, if complaint relies on claims outside of preempted area and does not present federal claim on its face, defendant may not remove because mere fact that preemption might ultimately be proved does not allow removal.

As the plaintiff has heretofore shown that pre-emption and/or complete pre-emption is not present with respect to the claims in his Complaint, removal is improper and this Court should and must remand this lawsuit to New York State Supreme Court forthwith. In any event, should the Court find that these claims must be recovered solely through ERISA, including but not limited to Section 502 thereof, then the proper remedy

23

would not be dismissal of the Complaint (as advocated by defendants) but the Court's conversion thereof to an ERISA claim.

### POINT III
### DEFENDANT NOVARTIS IS PROPER PARTY DEFENDANT THEREBY REQUIRING THE COURT TO DENY ITS MOTION TO DISMISS

The defendant cites, Leonelli v. Pennwalt Corp., 887 F.2d 1195 (2nd Cir., 1989) to claim that NOVARTIS is an improper party, but in that case the Court held:

> Plaintiff also proposes to allege that individual defendants Caddy and Young breached their fiduciary duty under ERISA's § 1104. Yet, because neither of these two defendants have any discretionary authority regarding the Pension Plan, they are not fiduciaries of the plan as defined by § 1002(21)(A). Thus, allowing a claim under § 1104 would also be futile."

In the case at bar, the plaintiff has not sought to bring an ERISA breach of fiduciary claim against his employer NOVARTIS, and therefore, he believes that this language in the opinion would not bar his claim against said defendant. Since the Plan has never been introduced by the defendants in this lawsuit, the Court cannot make any determination at this point in time whether or not the defendant, NOVARTIS, has any discretionary or non discretionary authority with respect to the provision of benefits under the Plan. Since the purported Employee Handbook Summary of the Plan, annexed to the Defendants' Motion Papers as an Exhibit, explicitly states that the Plan and not the Summary is the source of all rights and duties under the Plan (and that in cases of conflict the Plan controls over that summary) the Court cannot find as a matter of law that the defendant NOVARTIS is an improper party and subject to dismissal.

If the Court finds that despite the plaintiff's contentions herein, that the plaintiff must bring this action under ERISA, which plaintiff disputes, and/or that other necessary parties are required to be included in this lawsuit, in order to afford the plaintiff complete

24

relief, the plaintiff requests that pursuant to the FRCP, he be permitted to amend his

Complaint to add those additional parties, and requests such other relief as is just and

proper in the premises.   Lastly, the plaintiff does concede that if the Court does not

remand this lawsuit and/or that it finds that ERISA is controlling and completely pre-

emptive (despite the plaintiff's contentions to the contrary), that his claims for punitive

damages would not be viable under ERISA, under those circumstances.   However,

plaintiff still contends that his claims for attorneys' fees would still be meritorious either

on state law grounds, or under ERISA, and that the Court should not strike those damages

as they are appropriate and necessary for the enforcement of the plaintiff's claims herein.

### POINT IV
**PLAINTIFF HAS THE RIGHT TO A JURY TRIAL ON THE ISSUES
PRESENTED IN THE VERIFIED COMPLAINT WHETHER OR NOT
THE DEFENDANTS PREVAIL IN SHOWING SUCH CLAIMS TO ARISE
UNDER ERISA IN WHOLE OR PART**

In an artful understatement, Judge Blumenfeld noted that "[t]he availability of a

jury trial under section 502(a)(1)(B) of ERISA [29 U.S.C. 1132(a)(1)(B) ] is a frequently

litigated issue." *Powell v. General Dynamics Corporation*, Civ. No. H-85-496 (MJB),

slip op. at 2 (D.Conn. Nov. 25, 1985) ("Powell"). The ERISA statute itself provides little

guidance on the issue and our Court of Appeals has sent "conflicting signals" as to the

availability of a jury under ERISA. See, *Powell*, supra, slip op. at 4 passim; *Tourangeau*

*v. Uniroyal, Inc.*, Civ. No. N-86-208 (AHN) (D.Conn. Nov. 7, 1986, Magistrate's

Recommended Ruling Approved Mar. 5, 1987), slip op. at 10-15 ("Tourangeau");

*Abrams v. Grand Light & Supply Co., Inc. and Malcolm Rosen*, Civ. No. N-84-158

(WWE) (D.Conn. Sept. 28, 1986, Magistrate's Recommended Ruling Approved Oct. 15,

1986), slip op. at 11-13 ("Abrams"). Confronted by these "conflicting signals," these

judges have analyzed the issue in some depth, and plaintiff herewith summarizes their

conclusions. Based upon analogies to the traditional law of trusts, the holdings in other

circuits, and the apparent (although not totally unambiguous) inclination of our Court of

Appeals to join those circuits which deny a jury right under ERISA, see *Katsaros v.

Cody*, 744 F2d 270 (2nd Cir.) cert. denied, 469 U.S. 1072, 105 S.Ct. 565 (1984), other

judges in this District have elected to follow "the great weight of authority" and to deny a

jury right under ERISA. See also *Nobile v. Pension Committee of the Pension Plan for

Employees of New Rochelle Hospital,* 611 FSupp. 725, 727-28 (S.D.N.Y., 1985).

However, while each of these cases has denied a right to a jury trial for the

ERISA claims in the circumstances presented in each particular case, none has purported

to hold that a jury is unavailable as a matter of law simply because an ERISA claim is

involved. For example, Magistrate Margolis' opinion in *Tourangeau* emphasized that the

claims were essentially for breach of fiduciary duty and that there was no claim for

money damages, there was no collective bargaining agreement at issue, and no claim

under § 301 of the LMRA, 29 U.S.C. § 185. *Tourganeau* at 17. *Abrams,* supra, also

involved a claim for breach of fiduciary duty. Furthermore, one cannot confidently

characterize the holding of *Katsaros*, supra, 744 F.2d at 278, beyond the proposition that

"[t]here is no right to a jury trial of ERISA actions against pension fund trustees seeking

the equitable remedy of restitution." In these circumstances, it seems on the basis of the

particular facts presented in this case, and to decide the issue based upon the nature of the

claims and the relief sought, in accordance with the principles enunciated by the Supreme

Court in *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738 (1970).

It should be noted at the outset that almost every cause of action in plaintiffs' complaint, are presented in terms of breach of contract, and tortious conduct, although one cause of action did request declaratory relief with respect to the alleged breach of contract at issue herein; there are no allegations of breach of fiduciary duty. Nor is the equitable relief sought in the Complaint the primary or preponderating relief requested by the plaintiff, but merely a mechanism for the Court to enforce the trier of facts' determinations/judgment in this lawsuit.

District courts in other Circuits which have also faced complaints alleging breach of contract or misrepresentation claims under Section 502a(1)(B) of ERISA have concluded that such claims were triable to the jury under ERISA. *Haytcher v. ABS Industries*, 7 EBC (BNA) 2158, 2162 (N.D. Ohio, 1986) (" Haytcher "); *Bower v. The Bunker Hill Co.*, No. C-82-412 (RJM) slip op. (E.D.Wash., 1986) (" Bower ") ("In contrast [to actions against a trustee involving discretionary acts], when courts have been called on to determine whether an ambiguous contract provides for vested lifetime benefits they have not paid any particular deference to the interpretation given the agreement by the plan administrator. Rather, they have applied traditional contract principles and resorted to extrinsic evidence to determine the parties['] intent at the time of contracting."). In *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Park-Ohio Industries Inc.*, Civ.A. No. C85-1761 (N.D. Ohio, 1987) the court which had decided *Haytcher* further reviewed its ruling in that case in light of intervening precedent. Upon reconsideration, the court reaffirmed the availability of a jury trial under Sections 502(a)(1) and 502(a)(3) of ERISA. In *All Risks, Ltd. v. Equitable Life Assur. Soc. of U.S.*, 931 F.Supp. 409 (D.Md.,

27

1996) the Court held that Plaintiff was entitled to jury trial because there were no ERISA claims alleging, for example, breach of fiduciary duty, and the only claims remaining were state law misrepresentation claims.

While it might seem pre-mature to consider whether or not a jury trial is proper in the case at bar, considering the Court has yet to decide whether or not to remand the case to State Court, the plaintiff believes that in determining the defendants' motions and the plaintiff's cross-motions, the Court should and must keep in mind that the ultimate trier of facts in this case, would not be the Court itself, but a jury.

**CONCLUSION**

The defendants' motion should be denied in its entirety, the plaintiff's cross-motion should be granted in its entirety and this case remanded to New York State Supreme Court, New York County forthwith, and the plaintiff be granted such other and further relief as is just, proper and equitable in the premises.

Dated: New York, New York
       May 19, 2008

Respectfully Submitted,

ROBERT FELDMAN, ESQ (RF-0810)
Attorney(s) For Plaintiff

**CERTIFICATE OF SERVICE**

**I hereby certify that on May 20, 2008, a true copy of the foregoing Plaintiff's, SERGIO PAVON's, Memorandum of Law, dated May 19, 2008, together with Plaintiff's Notice of Cross-Motion To Remand, Dated May 19, 2008, and Plaintiff's Attorney's Affirmation, dated May 19, 2008, were filed electronically with this Court, and/or served by mail, upon anyone unable to accept electronic filing. Notice of this filing will be sent by email electronically to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.**

Robert Feldman (RF-0810)