UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____ _____    _____    .    __X

**SERGIO PAVON,**

                Plaintiff,

-against-

**METROPOLITAN LIFE INSURANCE CO., INC.,
And NOVARTIS CORP..**

      _____    _____Defendants._____    __X

**REPLY MEMORANDUM
OF LAW IN SUPPORT
OF CROSS-MOTION**

Case No. 08 CV 1272(PAC)

### I.   PRELIMINARY STATEMENT

Plaintiff, SERGIO PAVON, by his undersigned attorney, ROBERT FELDMAN, ESQ., hereby submits this Reply Memorandum of Law together with the annexed Exhibit incorporated herein by reference as though fully set forth herein at length in further Support of Plaintiff's Cross-Motions. That the Plaintiff contends that this lawsuit was improperly removed to this Court and that this Court should forthwith remand this lawsuit back to the Supreme Court of the State of New York, County of New York for further litigation. The plaintiff further requests that this Court grant plaintiff such other relief as the Court deems just, proper and equitable in the premises.

### II.   REPLY MEMORANDUM STATEMENT OF FACTS

The relevant facts are set forth in the Plaintiff's Verified Complaint which is annexed to the Defendants' Motion Papers as Exhibit "A" and is incorporated herein by reference as though fully set forth herein at length. That given the brevity of the Reply Memorandum of Law herein, I have incorporated same into this Declaration. I note for the record that the plaintiff, SERGIO PAVON, by his attorney(s) contend that the plaintiff's papers fully support the cross-motion, that any failure to reference cases cited by the Defendants herein or any particular facts cited by the defendants, do not concede any points made with respect to such cases or facts, and indeed, that instead the plaintiff

contends that the facts, cases and authorities cited by the plaintiff heretofore are more than sufficient to refute the defendants' argument and authorities whether in support of their motions or in opposition to the plaintiff's cross-motions. That the allegations contained in the Plaintiff's Verified Complaint, and made by the plaintiff and/or his attorneys on the pending applications herein when read in the light most favorable to the Plaintiff, establish that defendants are not entitled as a matter of law to the relief sought.

That contrary to the allegations contained in the Defendants' Reply/Opposition Papers herein, the defendants DID NOT restore any of the plaintiff's benefits PRIOR to the commencement of this lawsuit. This is a false and material misrepresentation of fact (lie) by the defendants of the first order and/or such statement was made in reckless disregard to its truth or falsity. The affirmant has personal knowledge that it was not until at least four to six weeks after the Supreme Court case was filed at the end of January, 2008 (sometime in or about early March, 2008) that the plaintiff's benefits were allegedly restored. It was also around one month subsequent to the plaintiff's commencement of the state court action, that the defendants allegedly terminated Malti Patel, the employee who wrote the January 11, 2008 letter that contained gross misrepresentations of fact and/or outright lies. That the defendants have not produced any documentation to show when the plaintiff's benefits were restored, but relies solely on the bald statement of their declarant. Plaintiff further notes that nowhere in the defendants' Motion Papers dated in April 2008, did the defendants aver to the Court that they had either restored the plaintiff's benefits or the date of such restoration.

Plaintiff further contends that had this action not been commenced the plaintiff's benefits would not have been restored by the defendants. It was solely and wholly

through the plaintiffs' attorneys' time, effort and expense (which are the subject of the
plaintiff's claims for attorney's fees in his Verified Complaint) that the defendants
reinstated his benefits. There was no good faith or generosity of spirit involved in such
belated restoration of plaintiff's benefits. Of course it was better that the defendants
restored plaintiff's benefits prior to judgment in this lawsuit, but that does not remove
their bad faith breach of contract, tortious and culpable conduct, and conflicts of interest
that caused the initial wrongful termination in the first instance. The defendants have
failed to introduce even a scintilla to contest plaintiff's averments that the defendants
acted contrary to the plaintiff's rights, and breached their agreements with him, due, *inter
alia,* to a serious conflict of interest. The defendants have failed to produce any evidence
to show the non-existence of such conflict of interest as a matter of law, moreover, the
defendants have failed, willfully and/or intentionally, to alert this Court, to two binding
precedents, that plaintiff believes are dispositive on the plaintiff's claims against the
defendants and are entitled to collateral estoppel as they had full and fair opportunity to
contest the conflict of interest and such issue was decided against METLIFE.

**III.   ARGUMENT**
### POINT I
### IN THE EVENT THAT THE COURT DETERMINES THAT THE PLAINTIFF'S LAWSUIT MUST BE DETERMINED UNDER ERISA, THE COURT MUST APPLY THE RULES SET FORTH IN ITS OPINION IN METLIFE v. GLENN CONCERNING DEFENDANTS' SERIOUSCONFLICT OF INTEREST

The defendants have failed to cite or even refer to three seminal cases that should
be dispositive of this litigation and result in a judgment in favor of the plaintiff. The first
relevant case, that was not cited by the defendants, is *Firestone Tire & Rubber Co. v.
Bruch, 489 U.S. 101, 109 S.Ct. 948, which set out four principles as to the appropriate*

3

standard of judicial review under § 1132(a)(1)(B (assuming arguendo, in the remote

event that this Court rejects the plaintiff's arguments that its common law claims

survive. this provision would then become operative for determining the lawsuit under

ERISA ):

> (1) A court should be "guided by principles of trust law," analogizing a plan
> administrator to a trustee and considering a benefit determination a fiduciary act.
> id., at 111-113, 109 S.Ct. 948; (2) trust law principles require de novo review
> unless a benefits plan provides otherwise. id., at 115, 109 S.Ct. 948; (3) where the
> plan so provides. by granting "the administrator or fiduciary discretionary
> authority to determine eligibility," "a deferential standard of review [is]
> appropriate," id., at 111, 115, 109 S.Ct. 948; and (4) if the administrator or
> fiduciary having discretion "is operating under a conflict of interest, that conflict
> must be weighed as a 'facto[r] in determining whether there is an abuse of
> discretion,' " id., at 115, 109 S.Ct. 948.

The defendant failed to cite this binding authority in its caselaw, even as it is

arguing to the Court that ERISA was applicable and also arguing the applicable standards

for the Court to apply in this lawsuit. It was apparently deliberately omitted by the

defendants, even though your affirmant had cited the defendants' conflicts of interest in

paragraph "11" of my initial Declaration dated May 19, 2008 as a basis for their wrongful

termination of benefits to the plaintiff. Plaintiff contends that as a proximate result of the

defendants' conflicts of interest and malicious and tortious conduct. the plaintiff was

compelled to bring this lawsuit in State Court in order to protect his rights because

proceeding through the defendants themselves was futile and would only have caused

further harm to the plaintiff when the defendants had no intention of reversing their

malicious and improper decision without a Court Order.

The second and fatal case. to the defendants in the case at bar and should and

must result in a judgment in favor of the plaintiff, was decided by the United States

Supreme Court. on June 19, 2008, to wit, --- S.Ct. ----. 2008 WL 2444796, *Metropolitan*

4

*Life Insurance Company, et al., Petitioners v. Glenn,* No. 06-923. A true copy of the majority opinion by Hon. Judge Breyer and the two concurring opinions by Hon. Judge Roberts and Hon. Judge Kennedy, are annexed hereto as Exhibit "A" and is incorporated herein by reference as though fully set forth herein at length. The case was decided by a 7-2 majority (two concurring opinions) and the dissent was written by Hon. Judge Scalia, with Hon. Judge Thomas joining in the dissent. The declarant has not annexed the dissenting opinion as the majority opinion disposes of the predominant issues in this lawsuit. As the Court can observe the petitioner, METLIFE, in that case before the US Supreme Court is identical to one of the defendants in the case at bar, and has continued to engage in serious conflicts of interest against beneficiaries, despite a spate of Court rulings that stretch back decades.

The facts in *MetLife,* supra are that Metropolitan Life Insurance Company (MetLife) was the administrator and the insurer of Sears' long-term disability insurance plan, which was governed by ERISA. The plan gave MetLife (as administrator) discretionary authority to determine the validity of an employee's benefits claim and provided that MetLife would also pay the claims. Respondent, Glenn, a Sears employee, was granted an initial 24 months of benefits under the plan following a diagnosis of a heart disorder. MetLife encouraged her to apply for, and she began receiving, SSD disability benefits based on an agency determination that she could do no work. But when MetLife itself had to determine whether or not she could work, to establish her eligibility for extended plan benefits, it allegedly found her capable of doing sedentary work.Glenn alleged that METLIFE wrongfully denied her the benefits due, *inter alia,* to a serious conflict of interest. Glenn sought federal-court review under ERISA, 29 USC §1132(a)

5

(1)(B), but the District Court denied relief. In reversing, the Sixth Circuit used a

deferential standard of review and considered it a strong conflict of interest that MetLife

both determined an employee's eligibility for benefits and paid the benefits out of its own

pocket. Based on a combination of this conflict and other circumstances, the Sixth Circuit

set aside MetLife's benefits denial. The High Court affirmed the Sixth Circuit's decision,

per Judge Breyer's Majority Opinion holding:

> "**A plan administrator's dual role of both evaluating and paying benefits
> claims create the kind of conflict of interest referred to in *Firestone*. That
> conclusion is clear where it is the employer itself that both funds the plan and
> evaluates the claim, but a conflict also exists where, as here, the plan
> administrator is an insurance company.** For one thing, the employer's own
> conflict may extend to its selection of an insurance company to administer its
> plan. For another, ERISA imposes higher-than-marketplace quality standards on
> insurers, requiring a plan administrator to "discharge [its] duties" in respect to
> discretionary claims processing "solely in the interests of the [plan's] participants
> and beneficiaries." 29 U.S.C. § 1104(a)(1); underscoring the particular
> importance of accurate claims processing by insisting that administrators "provide
> a 'full and fair review' of claim denials," *Firestone*, supra, at 113, 109 S.Ct. 948;
> and supplementing marketplace and regulatory controls with judicial review of
> individual claim denials, see § 1132(a)(1)(B)." Emphasis added.

The High Court in *MetLife, supra*, in discussing the significance of the conflict of interest

factor held further:

> "*Firestone's* "weighed as a 'factor' " language, 489 U.S., at 115, 109 S.Ct. 948,
> does not imply a change in the standard of review, say, from deferential to *de
> novo*. Nor should this Court overturn Firestone by adopting a rule that could bring
> about near universal *de novo* review of most ERISA plan claims denials. And it is
> not necessary or desirable for courts to create special burden-of-proof rules, or
> other special procedural or evidentiary rules, focused narrowly upon the
> evaluator/payor conflict. *Firestone* means what the word "factor" implies,
> namely, that judges reviewing a benefit denial's lawfulness may take account of
> several different considerations, conflict of interest being one. Here, the Sixth Circuit
> is no stranger to the judicial system. Both trust law and administrative law ask
> judges to determine lawfulness by taking account of several different, often case-
> specific, factors, reaching a result by weighing all together. Any one factor will
> act as a tiebreaker when the others are closely balanced. Here, the Sixth Circuit
> *gave the conflict some weight, but focused more heavily on other factors*: that
> MetLife *had encouraged Glenn to argue to the Social Security Administration*

*that she could do no work*, received the bulk of the benefits of her success in doing so (being entitled to receive an offset from her retroactive Social Security award*), and then ignored the agency's finding in concluding that she could do sedentary work; and that MetLife had emphasized one medical report favoring denial of benefits, had deemphasized other reports suggesting a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence. These serious concerns, taken together with some degree of conflicting interests on MetLife's part, led the court to set aside MetLife's discretionary decision. There is nothing improper in the way this review was conducted. Finally, the Firestone standard's elucidation does not consist of detailed instructions, because there "are no talismanic words that can avoid the process of judgment." Universal Camera Corp. v. NLRB*, 340 U.S. 474, 489, 71 S.Ct. 456, 95 L.Ed. 456." Emphasis added.

Accord, *Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979 (6th Cir.1991);

Order of March 11 at 8-11. The *Miller* Court also warned that "[b]ecause an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business, and the conflict of interest is substantial." As a response, "application of the standard [of review] should be shaped by the circumstances of the inherent conflict of interest." *Miller*, 925 F.2d at 984. Again, the defendants' Memo of Law again passes over another case finding that MetLife actions were rife with serious conflicts of interest. For more than sixteen years MetLife has consistently behaved with serious conflicts of interests and the Courts have routinely found such serious conflicts to exist, but MetLife has failed to apprise this Court of these cases and their serious and significant findings by Courts in other Circuits concerning MetLife's continuous misconduct.

The significance for the case at bar, in this decision, is that defendant, MetLife has been found by both the Sixth Circuit and the US Supreme Court to be operating its disability claims adjudications procedures under a clear conflict of interest. Since MetLife had a full and fair opportunity to contest the conflict of interest issue in the

7

above litigation, this holding by the appellate courts is binding under principles of *collateral estoppel* to the defendants in the case at bar.

It is little wonder that neither the defendants nor their counsel have mentioned either the Sixth Circuit's Opinion or the Supreme Court's Opinion in the papers submitted to this Court in the case at bar. The same factors that led the Sixth Circuit to find against MetLife, and which were affirmed by the High Court, are present in the case at bar, and, in the event the Court does not remand this case back to New York State Supreme Court, should and must result in identical ruling in favor of the plaintiff, Sergio Pavon. The defendants should be compelled to repay the plaintiff for their unlawful termination of benefits for more than one month's time, his emotional distress caused thereby, and the Court should and must award the plaintiff's reasonable attorney's fees, which the plaintiff and/or his attorneys will supply to the Court at the appropriate time. It was only the commencement of this lawsuit that compelled the defendants to reinstate the plaintiff's benefits, and it was the institution of the plaintiff's lawsuit that led to the termination of the defendants' female employee, Malti Patel, who had wrongfully terminated the plaintiff's benefits in the first place. For the foregoing reasons, the defendants' motions should be denied and plaintiff's cross motions granted.

### POINT II
### PLAINTIFF IS ENTITLED TO HIS REASONABLE ATTORNEY'S FEES, COSTS & EXPENSES IN THE EVENT THE COURT DEEMS ERISA TO BE APPLICABLE

In *Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435 (2nd Cir., 2006) the Court of Appeals held that the fact that federal district court, in ruling for insured in ERISA action arising from employee benefit plan's insurer's denial of disability insurance benefits, did not reach issue of whether insurer had acted in bad faith, did not preclude

8

court from awarding attorney fees to insured; court found culpability, as distinguished from bad faith, in insurer's failure to engage in "fair and open-minded consideration" of insured's claim, which justified attorney's fee award. In *Beauvais v. Citizens Financial Group, Inc.*, 418 F.Supp.2d 22 (D.R.I., 2006) the Court held that the ERISA plaintiff was entitled to attorney's fees, where insurer's claims administrator abused its discretion in terminating benefits allegedly based on lack of x-ray or magnetic resonance imaging (MRI) reports to support participant's disability claim of advanced degenerative joint disease without making a reasonable effort to obtain reports; while administrator may not have acted in bad faith, it was culpable for unreasonably denying claim and it could easily afford to pay lost benefits. **The Court further held that requiring administrator to pay benefits would help deter administrators from denying benefits for failure to produce records that they never requested, and attorney fee award was necessary to make participant whole.** These are almost the same facts present in the case at bar. The defendants falsely claimed to have requested documentation they never did, the plaintiff had previously and continuously established his disability. The defendants are culpable for their wrongful termination of benefits and abused their discretion for wrongfully denying the plaintiff's claim, attorney's fees are needed to make the plaintiff whole and defendants can afford to pay the plaintiff's damages and to deter culpable conduct.

In *Boyd v. Liberty Life Assurance Co. of Boston*, 362 F.Supp.2d 660 (W.D.N.C., 2005) the District Court held that the plaintiff-employee was entitled to reasonable attorney fees, incurred in suing administrator of long term disability policy covered by ERISA, and ultimately obtaining reversal of disability denial; administrator did not properly consider all medical evidence, administrator could easily afford to pay fees, and

9

disability was only reasonable finding given facts of case. The plaintiff in the case at bar likewise is entitled to attorney's fees against the within defendants based upon the clearly similar facts presented in the case at bar with the facts in *Boyd*. See also, *Mendez v. Teachers Ins. and Annuity Ass'n and College Retirement Equities Fund*, C.A.2 (N.Y.) 1992, 982 F.2d 783 (2nd Cir., 1992)('award of $21,190 in attorney fees to surviving spouse of beneficiary under retirement fund, reflecting 77 billable hours at hourly rate of $260 per hour, plus costs and disbursements, not abuse of discretion'); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053 (2nd Cir., 1989) ('prevailing attorneys in suit under ERISA entitled to reimbursement for use of "paraprofessionals" paralegals and law clerks--at prevailing market rate rather than payroll cost'); *Hollenbeck v. Falstaff Brewing Corp.*, 605 F.Supp. 421,( E.D.Mo.,1984) affd 780 F.2d 20 ('widow, who prevailed in ERISA suit against employer for benefits owing her as beneficiary was entitled to an award of attorney fees in amount of $121,500.50, plus $4,036.63 as costs'); *Merrell v. Block*, 809 F.2d 639, 642 (9th Cir., 1987) ('ERISA provides that either party may recover a reasonable "attorney's fee.," 29 U.S.C. § 1132(g)(1); the statute thus contemplates that reasonable attorneys' fees be awarded where a litigant retained an attorney and incurred legal fees.) Thus under the foregoing statutory and caselaw authority the plaintiff's Complaint is sufficient for the Court to award him appropriate damages, attorneys' fees costs and expenses. Plaintiff relies upon its prior arguments with respect to remand.

## IV    CONCLUSION

WHEREFORE, your affirmant respectfully requests that the Defendants' Motion be denied in toto, the plaintiff's cross-motion be granted in toto and plaintiff be granted such other and further relief as the Court may deem just, proper and equitable.

Dated: New York, New York
    June 21, 2008

Respectfully Submitted

ROBERT FELDMAN, ESQ. (RF 0810)
Attorney(s) for Plaintiff
Office & P.O. Address
370 South End Avenue, #8F
New York, New York 10280
(917) 657-5177

--- S.Ct. ----, 2008 WL 2444796 (U.S.)

Only the Westlaw citation is currently available.
Supreme Court of the United States
METROPOLITAN LIFE INSURANCE COMPANY, et al., Petitioners,
v.
Wanda GLENN.
No. 06-923.
Argued April 23, 2008.
Decided June 19, 2008.

**Background:** Participant brought suit under Employee Retirement Income Security Act **(ERISA)** to contest plan administrator's termination of long-term disability benefits on ground that she was no longer totally disabled. The United States District Court for the Southern District of Ohio, 2005 WL 1364625, entered judgment for plan, and participant appealed. The Sixth Circuit Court of Appeals, 461 F.3d 660, and plan administrator sought certiorari which was granted.

**Holding:** The Supreme Court, Justice Breyer, held that a reviewing court should consider the conflict of interest arising from the dual role of an entity as an ERISA plan administrator and payer of plan benefits as a factor in determining whether the plan administrator has abused its discretion in denying benefits, with the significance of the factor depending upon the circumstances of the particular case.
     Affirmed.

     Chief Justice Roberts filed opinion concurring in part and concurring in the judgment.

     Justice Kennedy filed opinion concurring in part and concurring in the judgment.

     Justice Scalia filed dissenting opinion in which Justice Thomas joined.

☑ KeyCite Citing References for this Headnote

231H Labor and Employment
  231HVII Pension and Benefit Plans
   231HVII(K) Actions
    231HVII(K)5 Actions to Recover Benefits
     231Hk684 Standard and Scope of Review
      231Hk690 k. Effect of Administrator's Conflict of Interest. Most Cited Cases

     Where the entity that administers an ERISA plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, a conflict of interest is created, and a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits, with the significance of the factor depending upon the circumstances of the particular case. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

*Syllabus* [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

*1 Petitioner Metropolitan Life Insurance Company (MetLife) is an administrator and the insurer of Sears, Roebuck & Company's long-term disability insurance plan, which is governed by the Employee Retirement Income Security Act of 1974 (ERISA). The plan gives MetLife (as administrator) discretionary authority to determine the validity of an employee's benefits claim and provides that MetLife (as insurer) will pay the claims. Respondent Wanda Glenn, a Sears employee, was granted an initial 24 months of benefits under the plan following a diagnosis of a heart disorder. MetLife encouraged her to apply for, and she began receiving, Social Security disability benefits based on an agency determination that she could do no work. But when MetLife itself had to determine whether she could work, in order to establish eligibility for extended plan benefits, it found her capable of doing sedentary work and denied her the benefits. Glenn sought federal-court review under ERISA, see 29 U.S.C. § 1132(a)(1)(B), but the District Court denied relief. In reversing, the Sixth Circuit used a deferential standard of review and considered it a conflict of interest that MetLife both determined an employee's eligibility for benefits and paid the benefits out of its own pocket. Based on a combination of this conflict and other circumstances, it set aside MetLife's benefits denial.

*Held:*

1. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80, sets out four principles as to the appropriate standard of judicial review under § 1132(a)(1)(B): (1) A court should be "guided by principles of trust law," analogizing a plan administrator to a trustee and considering a benefit determination a fiduciary act, *id., at 111-113, 109 S.Ct. 948;* (2) trust law principles require de novo review unless a benefits plan provides otherwise, *id., at 115, 109 S.Ct. 948;* (3) where the plan so provides, by granting "the administrator or fiduciary discretionary authority to determine eligibility," "a deferential standard of review [is] appropriate," *id., at 111, 115, 109 S.Ct. 948;* and (4) if the administrator or fiduciary having discretion "is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion,' " *id., at 115, 109 S.Ct. 948.* Pp. ---- - ----.

2. A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in *Firestone.* That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan. For another, ERISA imposes higher-than-marketplace quality standards on insurers, requiring a plan administrator to "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the [plan's] participants and beneficiaries," 29 U.S.C. § 1104(a)(1); underscoring the particular

*importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, supra, at 113, 109 S.Ct. 948; and supplementing marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). Finally, a legal rule that treats insurers and employers alike in respect to the existence of a conflict can nonetheless take account of different circumstances by treating the circumstances as diminishing the conflict's significance or severity in individual cases. Pp. ---- - ----.*

*3. The significance of the conflict of interest factor will depend upon the circumstances of the particular case. Firestone's "weighed as a 'factor' " language, 489 U.S., at 115, 109 S.Ct. 948, does not imply a change in the standard of review, say, from deferential to de novo. Nor should this Court overturn Firestone by adopting a rule that could bring about near universal de novo review of most ERISA plan claims denials. And it is not necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. Firestone means what the word "factor" implies, namely, that judges reviewing a benefit denial's lawfulness may take account of several different considerations, conflict of interest being one. This kind of review is no stranger to the judicial system. Both trust law and administrative law ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together. Any one factor will act as a tiebreaker when the others are closely balanced. Here, the Sixth Circuit gave the conflict some weight, but focused more heavily on other factors: that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (being entitled to receive an offset from her retroactive Social Security award), and then ignored the agency's finding in concluding that she could do sedentary work; and that MetLife had emphasized one medical report favoring denial of benefits, had deemphasized other reports suggesting a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence. These serious concerns, taken together with some degree of conflicting interests on MetLife's part, led the court to set aside MetLife's discretionary decision. There is nothing improper in the way this review was conducted. Finally, the Firestone standard's elucidation does not consist of detailed instructions, because there "are no talismanic words that can avoid the process of judgment." Universal Camera Corp. v. NLRB, 340 U.S. 474, 489, 71 S.Ct. 456, 95 L.Ed. 456. Pp. ---- - ----.*

*2 461 F.3d 660, affirmed.

BREYER, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and ALITO, JJ., joined, and in which ROBERTS, C.J., joined as to all but Part IV. ROBERTS, C.J., filed an opinion concurring in part and concurring in the judgment. KENNEDY, J., filed an opinion concurring in part and dissenting in part. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined.

Amy K. Posner, Michelle M. Constandse, Long Island City, NY, Lee T. Paterson, Winston & Strawn LLP, Los Angeles, CA, Miguel A. Estrada, Counsel of Record, Amir

C. Tayrani, Minodora D. Vancea, Gibson, Dunn & Crutcher LLP, Washington, D.C., Gene C. Schaerr, Winston & Strawn LLP, Washington, D.C., for Petitioners.

Stanley L. Myers, Law Offices of Stanley Myers, Columbus, Ohio, Ted M. Sichelman, University of California School of Law, Berkeley, California, E. Joshua Rosenkranz, Counsel of Record, Jeremy N. Kudon, Malaika M. Eaton, Sara K. Pildis, Heeler Ehrman LLP, New York, New York, for Respondent.

Justice BREYER delivered the opinion of the Court.

*3 The Employee Retirement Income Security Act of 1974 (ERISA) permits a person denied benefits under an employee benefit plan to challenge that denial in federal court. 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*; see § 1132(a)(1)(B). Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. *We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).*

I

Petitioner Metropolitan Life Insurance Company (MetLife) serves as both an administrator and the insurer of Sears, Roebuck & Company's long-term disability insurance plan, an ERISA-governed employee benefit plan. See App. 182a-183a; 29 U.S.C. § 1003. The plan grants MetLife (as administrator) discretionary authority to determine whether an employee's claim for benefits is valid; it simultaneously provides that MetLife (as insurer) will itself pay valid benefit claims. App. 181a-182a.

Respondent Wanda Glenn, a Sears employee, was diagnosed with severe dilated cardiomyopathy, a heart condition whose symptoms include fatigue and shortness of breath. She applied for plan disability benefits in June 2000, and MetLife concluded that she met the plan's standard for an initial 24 months of benefits, namely, that she could not "perform the material duties of [her] own job." *Id.,* at 159a-160a. MetLife also directed Glenn to a law firm that would assist her in applying for federal Social Security disability benefits (some of which MetLife itself would be entitled to receive as an offset to the more generous plan benefits). In April 2002, an Administrative Law Judge found that Glenn's illness prevented her not only from performing her own job but also "from performing any jobs [for which she could qualify] existing in significant numbers in the national economy." App. to Pet. for Cert. 49a; see also 20 CFR § 404.1520(g) (2007). The Social Security Administration consequently granted Glenn permanent disability payments retroactive to April 2000. Glenn herself kept none of the backdated benefits: three-quarters went to MetLife, and the rest (plus some additional money) went to the lawyers.

To continue receiving Sears plan disability benefits after 24 months, Glenn had to meet a stricter, Social-Security-type standard, namely, that her medical condition rendered her incapable of performing not only her own job but of performing "the material duties of any gainful occupation for which" she was "reasonably qualified." App. 160a. MetLife denied Glenn this extended benefit because it found that she was "capable of performing full time sedentary work." *Id.,* at 31a.

*\*4* After exhausting her administrative remedies, Glenn brought this federal lawsuit, seeking judicial review of MetLife's denial of benefits. See 29 U.S.C. § 1132(a)(1)(B); 461 F.3d 660, 665 (C.A.6 2006). The District Court denied relief. Glenn appealed to the Court of Appeals for the Sixth Circuit. Because the plan granted MetLife "discretionary authority to ... determine benefits," the Court of Appeals reviewed the administrative record under a deferential standard. *Id.,* at 666. In doing so, it treated "as a relevant factor" a "conflict of interest" arising out of the fact that MetLife was "authorized both to decide whether an employee is eligible for benefits and to pay those benefits." *Ibid.*

*The Court of Appeals ultimately set aside MetLife's denial of benefits in light of a combination of several circumstances: (1) the conflict of interest; (2) MetLife's failure to reconcile its own conclusion that Glenn could work in other jobs with the Social Security Administration's conclusion that she could not; (3) MetLife's focus upon one treating physician report suggesting that Glenn could work in other jobs at the expense of other, more detailed treating physician reports indicating that she could not; (4) MetLife's failure to provide all of the treating physician reports to its own hired experts; and (5) MetLife's failure to take account of evidence indicating that stress aggravated Glenn's condition. See id., at 674.*

MetLife sought certiorari, asking us to determine whether a plan administrator that both evaluates and pays claims operates under a conflict of interest in making discretionary benefit determinations. The Solicitor General suggested that we also consider " 'how' " any such conflict should " 'be taken into account on judicial review of a discretionary benefit determination.' " Brief for United States as *Amicus Curiae* on Pet. for Cert. 22. We agreed to consider both questions. See 552 U.S. ----, 128 S.Ct. 1117, 169 L.Ed.2d 845 (2008).

## II

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80, this Court addressed "the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under" § 1132(a)(1)(B), the ERISA provision at issue here. *Id.,* at 105, 109 S.Ct. 948; see also *id.,* at 108, 109 S.Ct. 948. *Firestone* set forth four principles of review relevant here.

*(1) In "determining the appropriate standard of review," a court should be "guided by principles of trust law"; in doing so, it should analogize a plan administrator to the trustee of a common-law trust; and it should consider a benefit determination to be a fiduciary act (i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries). Id., at 111-113, 109 S.Ct. 948. See also Aetna Health Inc. v. Davila,*

*542 U.S. 200, 218, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).*

*\*5 (2) Principles of trust law require courts to review a denial of plan benefits "under a de novo standard" unless the plan provides to the contrary. Firestone, 489 U.S., at 115, 109 S.Ct. 948; see also id., at 112, 109 S.Ct. 948 (citing, inter alia, 3 A. Scott & W. Fratcher, Law of Trusts § 201, p. 221 (4th ed.1988); G. Bogert & G. Bogert, Law of Trusts and Trustees § 559, pp. 162-168 (2d rev. ed.1980) (hereinafter Bogert); 1 Restatement (Second) of Trusts § 201, Comment b (1957) (hereinafter Restatement)).*

*(3) Where the plan provides to the contrary by granting "the administrator or fiduciary discretionary authority to determine eligibility for benefits," Firestone, 489 U.S., at 115, 109 S.Ct. 948 (emphasis added), "[t]rust principles make a deferential standard of review appropriate," id., at 111, 109 S.Ct. 948 (citing Restatement § 187 (abuse-of-discretion standard); Bogert § 560, at 193-208; emphasis added).*

*(4) If "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.' " Firestone, supra, at 115, 109 S.Ct. 948 (quoting Restatement § 187, Comment d; emphasis added; alteration omitted).*

*The questions before us, while implicating the first three principles, directly focus upon the application and the meaning of the fourth.*

### III

The first question asks whether the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of "conflict of interest" to which *Firestone's* fourth principle refers. In our view, it does.

That answer is clear where it is the employer that both funds the plan and evaluates the claims. In such a circumstance, "every dollar provided in benefits is a dollar spent by ... the employer; and every dollar saved ... is a dollar in [the employer's] pocket." *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 144 (C.A.3 1987). The employer's fiduciary interest may counsel in favor of granting a borderline claim while its immediate financial interest counsels to the contrary. Thus, the employer has an "interest ... conflicting with that of the beneficiaries," the type of conflict that judges must take into account when they review the discretionary acts of a trustee of a common-law trust. Restatement § 187, Comment *d; see also Firestone, supra,* at 115, 109 S.Ct. 948 (citing that Restatement comment); cf. Black's Law Dictionary 319 (8th ed.2004) ("conflict of interest" is a "real or seeming incompatibility between one's private interests and one's public or fiduciary duties").

Indeed, *Firestone* itself involved an employer who administered an ERISA benefit plan and who both evaluated claims and paid for benefits. See *489 U.S., at 105, 109 S.Ct. 948.* And thus that circumstance quite possibly was what the Court had in mind when it mentioned conflicted administrators. See *id., at 115, 109 S.Ct. 948.* The *Firestone* parties,

while disagreeing about other matters, agreed that the dual role created a conflict of interest of some kind in the employer. See Brief for Petitioners 6-7, 27-29, Brief for Respondents 9, 26, and Brief for United States as *Amicus Curiae* 22, in *Firestone Tire & Rubber Co. v. Bruch,* O.T.1988, No. 87-1054.

*6 MetLife points out that an employer who creates a plan that it will both fund and administer foresees, and implicitly approves, the resulting conflict. But that fact cannot change our conclusion. At trust law, the fact that a settlor (the person establishing the trust) approves a trustee's conflict does not change the legal need for a judge later to take account of that conflict in reviewing the trustee's discretionary decisionmaking. See Restatement § 107, Comment *f* (discretionary acts of trustee with settlor-approved conflict subject to "careful scrutiny"); *id.,* § 107, Comment *f,* Illustration 1 (conflict is "a factor to be considered by the court in determining later whether" there has been an "abuse of discretion"); *id.,* § 187, Comment *d* (same); 3 A. Scott, W. Fratcher, & M. Ascher, Scott and Ascher on Trusts § 18.2, pp. 1342-1343 (5th ed.2007) (hereinafter Scott) (same). See also, *e.g.,* Bogert § 543, at 264 (rev.2d ed.1993) (settlor approval simply permits conflicted individual to act as a trustee); *id.,* § 543(U), at 422-431 (same); Scott § 17.2.11, at 1136-1139 (same).

MetLife also points out that we need not follow trust law principles where trust law is "inconsistent with the language of the statute, its structure, or its purposes." *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 447, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (internal quotation marks omitted). MetLife adds that to find a conflict here is inconsistent (1) with ERISA's efforts to avoid complex review proceedings, see *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); (2) with Congress' efforts not to deter employers from setting up benefit plans, see *ibid.,* and (3) with an ERISA provision specifically allowing employers to administer their own plans, see 29 U.S.C. § 1108(c)(3).

But we cannot find in these considerations any significant inconsistency. As to the first, we note that trust law functions well with a similar standard. As to the second, we have no reason, empirical or otherwise, to believe that our decision will seriously discourage the creation of benefit plans. As to the third, we have just explained why approval of a conflicted trustee differs from review of that trustee's conflicted decisionmaking. As to all three taken together, we believe them outweighed by "Congress' desire to offer employees enhanced protection for their benefits." *Varity, supra,* at 497, 116 S.Ct. 1065 (discussing "competing congressional purposes" in enacting ERISA).

The answer to the conflict question is less clear where (as here) the plan administrator is not the employer itself but rather a professional insurance company. Such a company, MetLife would argue, likely has a much greater incentive than a self-insuring employer to provide accurate claims processing. That is because the insurance company typically charges a fee that attempts to account for the cost of claims payouts, with the result that paying an individual claim does not come to the same extent from the company's own pocket. It is also because the marketplace (and regulators) may well punish an insurance company when its products, or ingredients of its products, fall below par. And claims

processing, an ingredient of the insurance company's product, falls below par when it seeks a biased result, rather than an accurate one. Why, MetLife might ask, should one consider an insurance company *inherently* more conflicted than any other market participant, say, a manufacturer who might earn more money in the short run by producing a product with poor quality steel or a lawyer with an incentive to work more slowly than necessary, thereby accumulating more billable hours?

*7 Conceding these differences, we nonetheless continue to believe that for ERISA purposes a conflict exists. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan. An employer choosing an administrator in effect buys insurance for others and consequently (when compared to the marketplace customer who buys for himself) may be more interested in an insurance company with low rates than in one with accurate claims processing. Cf. Langbein, Trust Law as Regulatory Law, 101 Nw. U.L.Rev. 1315, 1323-1324 (2007) (observing that employees are rarely involved in plan negotiations).*

*For another, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S.Ct. 948 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).*

Finally, a legal rule that treats insurance company administrators and employers alike in respect to the *existence* of a conflict can nonetheless take account of the circumstances to which MetLife points so far as it treats those, or similar, circumstances as diminishing the *significance* or *severity* of the conflict in individual cases. See Part IV, *infra*.

## IV

We turn to the question of "how" the conflict we have just identified should "be taken into account on judicial review of a discretionary benefit determination." 552 U.S. ----, 128 S.Ct. 1117 (2008). In doing so, we elucidate what this Court set forth in *Firestone*, namely, that a conflict should "be weighed as a 'factor in determining whether there is an abuse of discretion.' " 489 U.S., at 115, 109 S.Ct. 948 (quoting Restatement § 187, Comment *d*; alteration omitted).

We do not believe that *Firestone's* statement implies a change in the *standard* of review, say, from deferential to *de novo* review. Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion. See Restatement § 187, Comments *d- j; id.*, § 107, Comment *f*; Scott § 18.2, at 1342-

1344. We see no reason to forsake *Firestone's* reliance upon trust law in this respect. See 489 U.S., at 111-115, 109 S.Ct. 948.

*\*8* Nor would we overturn *Firestone* by adopting a rule that in practice could bring about near universal review by judges *de novo-i.e.*, without deference -of the lion's share of ERISA plan claims denials. See Brief for America's Health Insurance Plans et al. as *Amici Curiae* 3-4 (many ERISA plans grant discretionary authority to administrators that combine evaluation and payment functions). Had Congress intended such a system of review, we believe it would not have left to the courts the development of review standards but would have said more on the subject. See *Firestone, supra*, at 109, 109 S.Ct. 948 ("ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B)"); compare, *e.g.*, C. Gresenz et al., A Flood of Litigation? 8 (1999), http://www.rand.org/pubs/issue_papers/2006/IP184.pdf (all Internet materials as visited June 9, 2008, and available in Clerk of Court's case file) (estimating that 1.9 million beneficiaries of ERISA plans have health care claims denied each year), with Caseload of Federal Courts Remains Steady Overall (Mar. 11, 2008), http://www.uscourts.gov/Press_Releases/2008/caseload.cfm (257,507 total civil filings in federal court in 2007); cf. *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (Congress does not "hide elephants in mouseholes").

Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts-which themselves vary in kind and in degree of seriousness-for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

We believe that *Firestone* means what the word "factor" implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. This kind of review is no stranger to the judicial system. Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together. See Restatement § 187, Comment *d;* cf., *e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-417, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (review of governmental decision for abuse of discretion); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (review of agency factfinding).

*\*9* In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of

biased claims administration. See Langbein, *supra*, at 1317-1321 (detailing such a history for one large insurer). It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits. See Herzel & Colling, The Chinese Wall and Conflict of Interest in Banks, 34 Bus. Law 73, 114 (1978) (recommending interdepartmental information walls to reduce bank conflicts); Brief for Blue Cross and Blue Shield Association as *Amicus Curiae* 15 (suggesting that insurers have incentives to reward claims processors for their accuracy); cf. generally J. Mashaw, Bureaucratic Justice (1983) (discussing internal controls as a sound method of producing administrative accuracy).

   The Court of Appeals' opinion in the present case illustrates the combination-of-factors method of review. The record says little about MetLife's efforts to assure accurate claims assessment. The Court of Appeals gave the conflict weight to some degree; its opinion suggests that, in context, the court would not have found the conflict alone determinative. See 461 F.3d, at 666, 674. *The court instead focused more heavily on other factors. In particular, the court found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work. See id., at 666-669. This course of events was not only an important factor in its own right (because it suggested procedural unreasonableness), but also would have justified the court in giving more weight to the conflict (because MetLife's seemingly inconsistent positions were both financially advantageous). And the court furthermore observed that MetLife had emphasized a certain medical report that favored a denial of benefits, had deemphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence. See id., at 669-674. All these serious concerns, taken together with some degree of conflicting interests on MetLife's part, led the court to set aside MetLife's discretionary decision. See id., at 674-675. We can find nothing improper in the way in which the court conducted its review.*

   Finally, we note that our elucidation of *Firestone's* standard does not consist of a detailed set of instructions. In this respect, we find pertinent this Court's comments made in a somewhat different context, the context of court review of agency factfinding. See *Universal Camera Corp., supra*. In explaining how a reviewing court should take account of the agency's reversal of its own examiner's factual findings, this Court did not lay down a detailed set of instructions. It simply held that the reviewing judge should take account of that circumstance as a factor in determining the ultimate adequacy of the record's support for the agency's own factual conclusion. *Id.*, at 492-497, 71 S.Ct. 456. In so holding, the Court noted that it had not enunciated a precise standard. See, *e.g.*, *id.*, at 493, 71 S.Ct. 456. But it warned against creating formulas that will "falsif[y] the actual process of judging" or serve as "instrument[s] of futile casuistry." *Id.*, at 489, 71 S.Ct. 456. The Court added that there "are no talismanic words that can avoid the process of judgment." *Ibid.* It concluded then, as we do now, that the "[w]ant of certainty" in

judicial standards "partly reflects the intractability of any formula to furnish definiteness of content for all the impalpable factors involved in judicial review." *Id.*, at 477, 71 S.Ct. 456.

*\*10* We affirm the decision of the Court of Appeals.

*It is so ordered.*

CHIEF JUSTICE ROBERTS, concurring in part and concurring in the judgment.

I join all but Part IV of the Court's opinion. I agree that a third-party insurer's dual role as a claims administrator and plan funder gives rise to a conflict of interest that is pertinent in reviewing claims decisions. I part ways with the majority, however, when it comes to *how* such a conflict should matter. See *ante*, at ---- - ----. The majority would accord weight, of varying and indeterminate amount, to the existence of such a conflict in every case where it is present. See *ante*, at ---- - ----. The majority's approach would allow the bare existence of a conflict to enhance the significance of other factors already considered by reviewing courts, even if the conflict is not shown to have played any role in the denial of benefits. The end result is to increase the level of scrutiny in every case in which there is a conflict-that is, in many if not most ERISA cases-thereby undermining the deference owed to plan administrators when the plan vests discretion in them.

I would instead consider the conflict of interest on review only where there is evidence that the benefits denial was motivated or affected by the administrator's conflict. No such evidence was presented in this case. I would nonetheless affirm the judgment of the Sixth Circuit, because that court was justified in finding an abuse of discretion on the facts of this case-conflict or not.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), this Court recognized that plan sponsors could, by the terms of the plan, reserve the authority to make discretionary claims decisions that courts would review only for an abuse of that discretion. *Id.*, at 111, 109 S.Ct. 948. We have long recognized "the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Ensuring that reviewing courts respect the discretionary authority conferred on ERISA fiduciaries encourages employers to provide medical and retirement benefits to their employees through ERISA-governed plans-something they are not required to do. Cf. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

*\*11* The conflict of interest at issue here is a common feature of ERISA plans. The majority acknowledges that the "lion's share of ERISA plan claims denials" are made by administrators that both evaluate and pay claims. See *ante*, at ----; see also *Guthrie v. National Rural Elec. Coop. Assn. Long-Term Disability Plan*, 509 F.3d 644, 650 (C.A.4 2007) (describing use of dual-role administrators as " 'simple and commonplace' " (quoting *Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 179 (C.A.4 2005)); *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197, 1205 (C.A.10 2002) (declining to permit additional evidence on review "whenever the same party is the administrator and payor" because such an arrangement is "commonplace"). For this reason, the majority is surely

correct in concluding that it is important to retain deferential review for decisions made by conflicted administrators, in order to avoid "near universal review by judges *de novo.*" *Ante,* at ----.

But the majority's approach does not do so. Saying that courts should consider the mere existence of a conflict in every case, without focusing that consideration in any way, invites the substitution of judicial discretion for the discretion of the plan administrator. Judicial review under the majority's opinion is less constrained, because courts can look to the bare presence of a conflict as authorizing more exacting scrutiny.

This problem is exacerbated because the majority is so imprecise about how the existence of a conflict should be treated in a reviewing court's analysis. The majority is forthright about this failing. In a triumph of understatement, the Court acknowledges that its approach "does not consist of a detailed set of instructions." *Ante,* at ----. The majority tries to transform this vice into a virtue, pointing to the practice of courts in reviewing agency determinations. See *ante,* at ----, ---- - ----. The standard of review for agency determinations has little to nothing to do with the appropriate test for identifying ERISA benefits decisions influenced by a conflict of interest. In fact, we have rejected this analogy before, see *Firestone, supra,* at 109-110, 109 S.Ct. 948 (rejecting the arbitrary and capricious standard of review under the Labor Management and Relations Act for claims brought under ERISA § 1132(a)(1)(B)), and not even the Solicitor General, whose position the majority accepts, endorses it, see Brief for United States as *Amicus Curiae* 29-30, n. 3 (noting the "key differences between ERISA and the administrative law context").

Pursuant to the majority's strained analogy, *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), makes an unexpected appearance on stage. The case is cited for the proposition that the lack of certainty in judicial standards " 'partly reflects the intractability of any formula to furnish definiteness of content for all the impalpable factors involved in judicial review.' " *Ante,* at ---- (quoting *Universal Camera, supra,* at 477, 71 S.Ct. 456). Maybe. But certainty and predictability are important criteria under ERISA, and employers considering whether to establish ERISA plans can have no notion what it means to say that a standard feature of such plans will be one of the "impalpable factors involved in judicial review" of benefits decisions. See *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 379, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) (noting "ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct"). The Court leaves the law more uncertain, more unpredictable than it found it. Cf. O. Holmes, The Common Law 101 (M. Howe ed.1963) ("[T]he tendency of the law must always be to narrow the field of uncertainty").

*\*12* Nothing in *Firestone* compels the majority's kitchen-sink approach. In *Firestone,* the Court stated that a conflict of interest "must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " 489 U.S., at 115, 109 S.Ct. 948 (quoting Restatement (Second) of Trusts § 187, Comment *d* (1959) (alteration in original)). The cited Restatement confirms that treating the existence of a conflict of interest "as a factor" means considering whether the conflicted trustee "is *acting* from an improper

motive" so as to "further some interest of his own or of a person other than the beneficiary." *Id.,* § 187, Comment *g* (emphasis added). See also *post,* at ---- - ----. (SCALIA, J., dissenting). The language in *Firestone* does not specify whether the existence of a conflict should be thrown into the mix in an indeterminate way along with all other considerations pertinent in reviewing a benefits decision, as the majority would apparently have it, or instead weighed to determine whether it actually affected the decision.

It is the actual motivation that matters in reviewing benefits decisions for an abuse of discretion, not the bare presence of the conflict itself. Consonant with this understanding, a conflict of interest can support a finding that an administrator abused its discretion only where the evidence demonstrates that the conflict actually motivated or influenced the claims decision. Such evidence may take many forms. It may, for example, appear on the face of the plan, see *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 7, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (offering hypothetical example of a plan that gives "a bonus for administrators who denied benefits to every 10th beneficiary"); it may be shown by evidence of other improper incentives, see *Armstrong v. Aetna Life Ins. Co.,* 128 F.3d 1263, 1265 (C.A.8 1997) (insurer provided incentives and bonuses to claims reviewers for "claims savings"); or it may be shown by a pattern or practice of unreasonably denying meritorious claims, see *Radford Trust v. First Unum Life Ins. Co.,* 321 F.Supp.2d 226, 247 (D.Mass.2004) (finding a "pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics"). The mere existence of a conflict, however, is not justification for heightening the level of scrutiny, either on its own or by enhancing the significance of other factors.

The majority's application of its approach confirms its overbroad reach and indeterminate nature. Three sets of circumstances, the majority finds, warrant the conclusion that MetLife's conflict of interest influenced its decision to deny Glenn's claim for benefits: MetLife's failure to account for the Social Security Administration's finding of disability after MetLife encouraged Glenn to apply to the agency for benefits; MetLife's emphasis of favorable medical reports and deemphasis of unfavorable ones; and MetLife's failure to provide its internal experts with all the relevant evidence of Glenn's medical condition. See *ante,* at ---- - ----. These facts simply prove that MetLife abused its discretion in failing to consider relevant, expert evidence on the question of Glenn's disability status. There is no basis for supposing that the conflict of interest lent any greater significance to these factors, and no logical reason to give the factors an extra dollop of weight because of the structural conflict.

*\*13* Even the fact that MetLife took "seemingly inconsistent positions" regarding Glenn's claim for Social Security benefits falls short. *Ante,* at ----. That MetLife stood to gain financially from ignoring the agency's finding and denying Glenn's claim does not show improper motivation. If it did, every decision to deny a claim made by a dual-role administrator would automatically qualify as an abuse of discretion. No one here advocates such a *per se* rule. As for MetLife's referral of Glenn to the agency, the plan itself required MetLife to deduct an estimated amount of Social Security disability benefits "whether or not [Glenn] actually appl[ied] for and receive[d] those amounts," App. 167a, and to assist plan participants like Glenn in applying for Social Security

13

benefits, see *id.,* at 168a. Hence, it was not the conflict that prompted MetLife to refer Glenn to the agency, but the plan itself, a requirement that any administrator, whether conflicted or not, would be obligated to enforce.

In fact, there is no indication that the Sixth Circuit viewed the deficiencies in MetLife's decision as a product of its conflict of interest. Apart from remarking on the conflict at the outset and the conclusion of its opinion, see 461 F.3d 660, 666, 674 (2006), the court never again mentioned MetLife's inconsistent obligations in the course of reversing the administrator's decision. As the court explained, MetLife's decision "was not the product of a principled and deliberate reasoning process." *Id.,* at 674. MetLife failed to acknowledge the contrary conclusion reached by the Social Security Administration, gave scant weight to the contrary medical evidence supplied by Dr. Patel, and neglected to provide its internal experts with Dr. Patel's reports. *Ibid.*; see also *ante, at ---- - ----.* In these circumstances, the Court of Appeals was justified in finding an abuse of discretion wholly apart from MetLife's conflict of interest.

I would therefore affirm the judgment below.

JUSTICE KENNEDY, concurring in part and dissenting in part.

*\*14* The Court sets forth an important framework for the standard of review in ERISA cases, one consistent with our holding in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In my view this is correct, and I concur in those parts of the Court's opinion that discuss this framework. In my submission, however, the case should be remanded so that the Court of Appeals can apply the standards the Court now explains to these facts.

There are two ways to read the Court's opinion. The Court devotes so much of its discussion to the weight to be given to a conflict of interest that one should conclude this has considerable relevance to the conclusion that MetLife wrongfully terminated respondent's disability payments. This interpretation is the one consistent with the question the Court should address and with the way the case was presented to us. A second reading is that the Court concludes MetLife's conduct was so egregious that it was an abuse of discretion even if there were no conflict at all; but if that is so then the first 11 pages of the Court's opinion is unnecessary to its disposition.

The Court has set forth a workable framework for taking potential conflicts of interest in ERISA benefits disputes into account. It is consistent with our opinion in *Firestone,* and it protects the interests of plan beneficiaries without undermining the ability of insurance companies to act simultaneously as plan administrators and plan funders. The linchpin of this framework is the Court's recognition that a structural conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Ante,* at ----. And it is on this point that the Court's opinion parts company with the decision of the Court of Appeals for the Sixth Circuit. The Court acknowledges that

14

the structural conflict of interest played some role in the Court of Appeals' determination that MetLife had abused its discretion. *Ibid.* But as far as one can tell, the Court of Appeals made no effort to assess whether MetLife employed structural safeguards to avoid conflicts of interest, safeguards the Court says can cause the importance of a conflict to vanish.

The Court nonetheless affirms the judgment, without giving MetLife a chance to defend its decision under the standards the Court articulates today. In doing so, it notes that "[t]he record says little about MetLife's efforts to assure accurate claims assessment," *ibid.*, thereby implying that MetLife is to blame for failing to introduce structural evidence in the earlier proceedings. Until today's opinion, however, a party in MetLife's position had no notice of the relevance of these evidentiary considerations.

By reaching out to decide the merits of this case without remanding, the Court disadvantages MetLife solely for its failure to anticipate the instructions in today's opinion. This is a deviation from our practice, and it is unfair. Given the importance of evidence pertaining to structural safeguards, this case should have been remanded to allow the Court of Appeals to consider this matter further in light of the Court's ruling.

*15 For these reasons, I concur in part but dissent from the order affirming the judgment.